[Civ. No. 13778. Second Dist., Div. Two. Sept. 25, 1942.]

HAZEL CRISWELL MILLER, Respondent, v. FRANK A. CRISWELL, Appellant.

Redmond & Redmond and Joseph M. Bernstein for Appellant.

William H. Hodges and Paul R. Matthews for Respondent.

GOULD, J. pro tem.—By this action plaintiff sues her former husband to rescind her conveyance to him of certain realty alleged to have been procured by means of his fraud.

Between December 20, 1921, the date of their marriage in Michigan, and June 13, 1938, when a final decree of divorce

was signed and entered by the Superior Court of Los Angeles County, plaintiff and defendant were husband and wife. After the divorce each married again. Their married life was a turbulent one. A separation occurred in 1925, another in 1931. In 1932 or 1933 the wife came to Los Angeles and, she testified, bought the two lots which are the subject of the within action, giving as payment therefor a $200 diamond bracelet, a gift to her by her husband some years previously, and a $2,500 diamond bracelet, given to her as a present in 1927 or 1928 by a "fine, elderly gentleman." Defendant (the husband) also came to Los Angeles a few months later, and after a small house was moved upon the lots which the wife had purchased the couple moved into the place, occupied it as their home and resumed their marital relationship, a status which continued until the interlocutory decree of divorce in 1937.

Defendant established himself in business in the operation of a "beer parlor," plaintiff busied herself as a housewife and in the physical improvement of their home, both husband and wife contributing to the work and financial outlay in upbuilding the property. Originally the deed vested title to the property in plaintiff's name. Subsequently, about July 8, 1935, a double transfer made plaintiff and defendant owners as joint tenants.

Incidents culminating May 12, 1937, provide the background for the litigation now before us. Apparently the marital affairs of plaintiff and defendant had encountered such difficulties that they decided to terminate their marriage by divorce. It was agreed between themselves that the husband should seek a divorce, and together they set out on the 12th of May to effectuate their purpose. On their way to the office of an attorney who had been recommended to them plaintiff claims that defendant plied her with intoxicating liquors to such an extent that she became "dizzy and did not realize what I was doing." Defendant denies that plaintiff at the time of the visit to the attorney's office was inebriated, and the attorney himself, called as a witness, testified he noticed no sign of intoxication.

Be that as it may, and it becomes more or less immaterial in view of the trial court's findings on other points, plaintiff and defendant consulted the attorney about the contemplated divorce and about their property. A divorce complaint was made out that day, filed in the superior court and summons

issued thereon and was served upon plaintiff in the office of the attorney, who appeared as attorney for the husband in the suit. At the same time a deed was made out conveying the real property in question from the wife to the husband, signed by the wife and delivered to the husband, who at the same time gave the wife a check for $200. The husband claims that the $200 was consideration for conveyance to him of the real property, but it is significant that no United States revenue stamp was attached to the deed, which bore the notation, placed upon it by the attorney, "The consideration for this deed is less than $100 and no revenue stamps are affixed for said reason." The wife testified that the $200 check was given to her to pay doctors' and other outstanding bills.

On the same 12th day of May the attorney took data which formed the basis of a property settlement agreement between the husband and wife, which was thereafter drawn up, sent by mail to the husband and signed by both spouses May 17, 1937. This agreement, which purports to "finally settle all property rights between themselves forever", makes no mention of the $200 nor of the real property in question here, although it does assign to the husband the "family automobile", the household furnishings and the beer parlor.

It is the contention of the wife, as amplified by her in her testimony at the trial, that when she went with her husband to the attorney's office it was for the purpose of arranging for a divorce and for placing the real property, at that time owned by them jointly, in such shape that their respective interests in the home place would be protected "in case anything happened", and to avoid expense of probate proceedings; that she at no time intended to divest herself of her interest in the property, and that the action and conduct of her husband in obtaining the grant deed from her were fraudulent and based on false representations on his part. She also testified that her experience previous to the giving of the deed, as a chorus girl, an unsuccessful milliner and as a housewife, unfitted her for business transactions, and that she was inexperienced in business matters—a contention with which defendant agreed. Plaintiff also alleged and testified that she did not discover the fraud until May 23, 1941, when she learned that her former husband was trying to sell the property without consulting her; that she obtained legal counsel within forty-eight hours, consulted

the records of the county recorder's office and learned the truth as to the deed of May 12, 1937; that she immediately made demand upon defendant for a reconveyance of her interest in the property, and upon his refusal within seven days of discovery of the fraud filed suit to compel restitution.

Upon the trial plaintiff prevailed, the court ordering the grant deed of May 12, 1937, rescinded and annulled, and that plaintiff be restored to her former status as a joint tenant with defendant in said property. Relief was denied defendant upon a cross-complaint, in which he sought to quiet title in himself as against plaintiff's claims.

Defendant appeals. But he looks in vain to this tribunal for any succor, comfort or relief. The entire transaction, not only as to the collusive divorce suit, but also as to the property transfer, is tainted with fraud to such a degree that the mere statement of the case is sufficient to defeat appellant's claims. Whether or not respondent was stupefied by intoxicants at the time she gave the deed, whether or not her lack of business experience made it impossible for her to comprehend the nature and import of the document she signed, the court must frown upon a transaction such as is disclosed by the undisputed evidence in this case, where a wife, without benefit or advice from an independent attorney or any other person, is divested of her valuable interest in property where she has no counsel except her adversary husband and his legal adviser. If it may be said, under any construction of the evidence, that there was consideration for the deed, that consideration could only be that the husband procure a divorce; and such consideration is illegal and universally condemned by the courts as against public policy.

The evidence submitted to the trial court was ample and sufficient to sustain its findings and judgment. At the most, appellant can urge that there was a conflict in evidence; and under the rule, many times reiterated, an appellate court will not disturb the determination of the trial court upon such conflict.

Appellant urges that at the trial the burden of proof was upon the plaintiff (respondent); that the plaintiff was required to overcome the presumptions attendant upon the execution and delivery of a written instrument, as well as numerous appropriate presumptions set forth in sections 1962 and 1963 of the Code of Civil Procedure, and that the alle-

gations of the complaint should have been proved with reasonable certainty. With none of these fundamental legal propositions do we quarrel, but merely observe that by proving the case of fraud, as alleged, respondent met every test required by law, and the court's findings and judgment are fully supported. Rescission under the circumstances was the proper remedy upon the allegations and proof of fraud. (§ 1689, Civ. Code.)

Judgment affirmed.

Moore, P. J., and Wood (W. J.), J., concurred.