64 Cal.App.3d 786 (1976)
134 Cal. Rptr. 749
Estate of EMMETT E. WILSON, Deceased.
TITLE INSURANCE AND TRUST COMPANY et al., Petitioners and Respondents,
v.
NANCY LEASE, Objector and Appellant.
Docket No. 2880.
Court of Appeals of California, Fifth District.
December 10, 1976.
*791 COUNSEL
Batchelor & Wild and William F. Batchelor for Objector and Appellant.
King, Eyherabide, Anspach, Friedman, Robinson & W.E. James and Stephen Eyherabide for Petitioners and Respondents.
OPINION
FRANSON, J. 

INTRODUCTION
This appeal presents the question of whether real and personal property valued at $705,000 and held of record title in joint tenancy by the decedent and his wife, respondent Grace Wilson, should be included in the decedent's probate estate for administration and distribution under his will. Appellant, a niece and residuary beneficiary under decedent's will, contends by reason of the will's original provisions declaring all property of decedent and his spouse, including joint tenancy property, to be community property and Grace Wilson's written consent and election to take under the will, that the character of the joint tenancy property was transmuted by agreement between the spouses to community property and should have been included in the probate estate.
The trial court found that regardless of the decedent's written declarations concerning the joint tenancy property and Grace Wilson's consent thereto, the property remained true joint tenancy property and on decedent's death vested by operation of law in Grace Wilson as the surviving joint tenant.
Because of the trial court's finding, appellant's interest as a residuary legatee will be eliminated in the following manner: apart from the joint tenancy property, approximately $221,000 of community property was owned by the decedent and Grace Wilson at the time of the decedent's death. This property was included in the probate estate. Decedent provided in his will that all federal and state death taxes imposed on any property by reason of his death, whether or not included in his probate *792 estate, and a family allowance to his widow are to be paid out of the residue of his estate which under the will is limited to his one-half interest in the community property. The taxes and family allowance will exhaust the residuary estate and appellant will receive nothing under the will.

FACTS
(1a) The facts giving rise to the dispute are as follows: Emmett E. Wilson, decedent herein, and Grace T. Wilson were married in 1933. Decedent worked as a manager of the Title Insurance and Trust Company in Bakersfield until 1963 when he retired at age 65. He died on November 24, 1971. He and Mrs. Wilson had no children.
During their marriage Mr. Wilson acquired considerable real and personal property in California. Much of the property was put in joint tenancy with Grace Wilson so that the parties would enjoy the right to survivorship. Deeds and documents showing joint tenancy to various properties were kept in a safety deposit box at Crocker Bank. The parties also maintained a joint checking and savings account at Crocker Bank.
In 1966 decedent had attorney Keith Stinson draw up joint and mutual wills for himself and his wife.[1] The original will dated December 1, 1966, purported to dispose of all the community property from his marriage to Grace Wilson. Specifically, the will provided in paragraphs 7 and 12:
"It is my intention by this will to dispose of my one-half of the community property; my wife's one-half of the community property and all of my separate property.
*793 "I declare that all property which now stands in joint tenancy, in my name and the name of my said wife, except our residence and bank checking accounts, is wholly community property. In addition to any separate property which I may own at the time of my death, I intend hereby to dispose of the entire community estate, believing that my said wife will be most benefited by the provisions herein made for her and it is my desire that she accept these provisions rather than claim under such rights as may be given her by law, except that, in any event, she shall be entitled to a family allowance out of my estate.
"In the event my said wife shall elect to take such rights as are given her by law, I then direct that the bequest in her favor contained herein regarding the residence, the household goods, and personal adornment, shall remain valid and operative and that all other bequests, devices [sic] and provisions in her favor herein contained shall be deemed void and of no effect, but the remaining provisions herein in favor of other persons shall nevertheless be valid and operative.
".... .... .... .... ...
"I have provided herein for the disposition of all my separate property and any quasi community property I may have and the entire community property of my surviving spouse and myself, because of my firm belief that the provisions of this will are in the best interests of my surviving spouse, and I urgently request that my surviving spouse accept these provisions. If my surviving spouse should elect to take the rights given my surviving spouse by law, including the law affecting community property or quasi community property, then my surviving spouse shall receive under this will only the property given outright to my said surviving spouse in connection with personal goods and household adornment, and the remaining provisions hereof, including the provisions for final termination of the trust, shall be carried into effect and the remainder of the trust estate shall be held, administered and distributed by the trustee in the same manner as though my said surviving spouse had predeceased me." (Italics added.)
Under the will decedent created trust "A" (marital trust) and trust "B" (residuary trust). In trust "A" would be placed decedent's spouse's share of the community assets less a proportionate share of the amounts chargeable against the entire community. In trust "B" would be placed the residue of the community estate. If Grace Wilson elected to enter *794 into the terms of the will, she would receive a life estate in the assets bequeathed to trust "A" and "B," and upon her death, the principal remaining in trust "A" would go to those persons whom Grace Wilson would name in her last will, and the residue remaining in trust "B" would go to those persons named in decedent's will.
Thus, the original will included a "forced election," depriving Grace Wilson of all benefits except the specific bequests and a family allowance if she elected to take against the will. The language also declared that all property standing in joint tenancy with named exceptions is wholly community property.
Attached to decedent's will was a "wife's consent" dated December 1, 1966, and signed by Grace Wilson. It provides as follows:
"I hereby certify that I am the wife of EMMETT E. WILSON and do hereby certify that I have read the foregoing will of my husband and fully understand said will and that my husband thereby disposes of not only his separate property but also our community property now owned or hereafter to be acquired, including my half thereof, and being fully convinced of its reasonableness and the wisdom of its provision, I hereby elect to accept and to acquiesce in the provisions of said will, waiving all claims to my share of any community property and any and all other claims that I may have upon any of the property disposed of by said will including all of his property, exempt from execution, and my right to a probate homestead, but not including, however, and expressly excepting therefrom, my right to a family allowance out of his estate during the probate administration thereof. This election and waiver is not to be deemed a present grant or release of my right, title, interest or estate in any of our community property now owned or hereafter to be acquired, but shall be effective and valid only after the demise of my husband and upon the condition precedent that said will shall be duly admitted to probate by a court of competent jurisdiction and that said probate shall not thereafter be revoked."
By this statement of consent, Grace Wilson elected to accept and acquiesce in the provisions of decedent's will and inferentially agreed to decedent's declaration that the property held in joint tenancy was community property. As previously noted, Grace Wilson at the same time executed a will similar to her husband's which inferentially *795 contained a similar declaration as to the character of the joint tenancy property, i.e., that it was in fact community property.
Decedent made two codicils to his will. Only the second codicil is relevant to the present lawsuit. The second codicil was executed by decedent on March 16, 1970, with the assistance of attorney Lawrence Baker. The provisions important to this case are quoted below:
"ONE: I hereby revoke paragraph SEVEN of said will, ... and do hereby substitute in its place and stead, the following:
"I have by this will provided for the disposition of my wife's share of the community property of our marriage, as well as the property over which I have power of testamentary disposition. Although I recognize that my wife is entitled to take her share of our community property free of this will, it is my wish and desire, without any compulsion on her to do so, that she acquiesce in and consent to my disposition of her share of our community property. If my wife shall not so consent prior to distribution of my estate, but shall elect to take the rights given to her by law, she shall, nevertheless, be entitled to all the benefits given her by this will with respect to property over which I have power of testamentary disposition. In any event, my wife shall be entitled to a family allowance out of my estate.
"TWO: I hereby revoke paragraph TWELFTH of said last will and testament which appears on pages 23 and 24 of my said will, and I do hereby substitute in its place and stead, the following:
"I have provided herein for the distribution of all my separate property and any quasi community property I may have and the entire community property of my surviving spouse and myself, because of my firm belief that the provisions of this will are in the best interests of my surviving spouse. Although I recognize that my wife is entitled to take her share of our community property free of this will, it is my wish and desire, without any compulsion on her to do so, that she acquiesce in and consent to my distribution of her share of our community property. If my wife shall not so consent prior to the distribution of my estate, but shall elect to take the rights given to her by law, she shall, nevertheless, be entitled to all the benefits given her by this will with respect to property over which I have power of testamentary disposition, and in any event, my wife shall be entitled to a family allowance out of my estate.
*796 "THREE: I recognize and agree that my wife's consent attached to my said will, said consent being an election to accept and acquiesce in the provisions of said will, is null and void and of no effect.
"FOUR: In all other respects, I hereby republish and reconfirm my said will of December 1, 1966, and the codicil thereto of December 6, 1968."
The 1970 codicil did away with the forced election of the original will of December 1, 1966.[2] The election was made voluntary, wherein Grace Wilson could elect to take against the will and still receive the specific bequests in the 1966 will, as well as a family allowance. Furthermore, if Grace Wilson elected to take against the will she was entitled to all of the benefits given her by the 1966 will with respect to property over which "I [decedent] have power of testamentary disposition." Thus, under the will as amended by the codicil, Grace Wilson would receive a life estate in decedent's one-half share of the community property even if she elected to take against the will. The remainder interest in decedent's share of the community property was to go to his heirs regardless of whether Grace Wilson took under the will.
Grace Wilson took against decedent's will and thereby received her one-half of the community property together with a life estate in decedent's one-half interest in the community property.
Paragraph 13 of the 1966 will provided that all estate, inheritance and other death taxes or charges imposed by reason of decedent's death, whether passing under the will or otherwise, be paid out of the residue of the estate remaining after distribution to the marital trust "without proration of any charge therefor against any person who receives such property under the terms of this will or otherwise." The residue in this case was decedent's half interest in the community property. Because the joint tenancy property was excluded from the probate estate, all of the decedent's interest in the community property was exhausted in meeting the taxes and the family allowance.

*797 THE TRIAL COURT ERRED IN FINDING THERE WAS NO TRANSMUTATION OF THE JOINT TENANCY PROPERTY TO COMMUNITY PROPERTY
The trial court found that decedent and his surviving spouse "at no time had any agreement that all of the assets which they owned or had an interest in, regardless of how title was held whether in joint tenancy or otherwise, was their community property." This finding ignores the clear import of paragraph 7 of the 1966 will and Grace Wilson's consent thereto.
(2a) A declaration in a deed or other instrument that spouses are to take property as joint tenants raises a presumption that they intend to take a true joint tenancy title. (Estate of Jameson (1949) 93 Cal. App.2d 35, 41 [208 P.2d 54].) Nevertheless, extrinsic evidence is admissible to show that spouses who take property as joint tenants actually intended it to be community property. (Tomaier v. Tomaier (1944) 23 Cal.2d 754, 757 [146 P.2d 905]; Gudelj v. Gudelj (1953) 41 Cal.2d 202, 212 [259 P.2d 656].) As stated in Jenkins v. Jenkins (1957) 147 Cal. App.2d 527, 528-529 [305 P.2d 289]: (3) "It is a common practice for a husband and wife who have acquired funds as community property to use the same in the purchase of real property and to take title thereto as joint tenants, being motivated solely by a desire to have the privileges of survivorship. It frequently happens that they have no intention of abandoning community ownership and do not understand that placing the title in joint tenancy would affect the change of ownership or would serve any purpose other than to avoid the necessity of proceedings in probate. If the evidence is sufficient to convince the court that the parties had no agreement and no intention to alter the community character of the property, it may properly be determined that it remains community property notwithstanding the fact that title was knowingly taken in joint tenancy." (See also Schindler v. Schindler (1954) 126 Cal. App.2d 597 [272 P.2d 566]; Brown & Sherman (1953) Joint Tenancy or Community Property?: Evidence. 28 State Bar J. 163.)[3]
*798 (2b) No formalities are required for transmuting joint tenancy property to community property and it may be converted at any time by oral agreement between the spouses. (Beam v. Bank of America (1971) 6 Cal.3d 12, 25 [98 Cal. Rptr. 137, 490 P.2d 257]; Tomaier v. Tomaier, supra, 23 Cal.2d 754, 757-758.) Moreover, the mutual consent of the spouses is a sufficient consideration to support the changeover (Civ. Code, § 4802), and the only limitation is that a transmutation agreement must be fair and based on a full disclosure of the pertinent facts. (Civ. Code, § 5103.)
(1b) It is well settled that joint or companion wills executed by spouses and declaring their property to be community property may change its character from separate to community. (Estate of Watkins (1940) 16 Cal.2d 793, 797-798 [108 P.2d 417, 109 P.2d 1]; Estate of Jameson, supra, 93 Cal. App.2d at p. 42; Chase v. Leiter, supra, 96 Cal. App.2d 439, 448-449; 7 Witkin, Summary of Cal. Law (8th ed. 1974) Community Property, §§ 51, 65.) In Security First Nat. Bank v. Stack (1939) 32 Cal. App.2d 586 [90 P.2d 337], the husband declared in his will that all property in which he had an interest or which stood in his name or in his and his wife's name was community property. The will also provided that it was the husband's intention to dispose of the entire community estate. In Stack, as in the present case, the decedent's wife executed a consent in which she claimed to fully understand her husband's will and acquiesced in its provisions. After her husband's death, the wife claimed title as a surviving joint tenant to certain securities held in the spouse's joint names and purchased with funds from their joint bank accounts. The court held that the declarations in the husband's will coupled with the wife's consent terminated the joint tenancy and fixed the character of their property as community property. Importantly, the transmutation agreement was held to be effective from the date of its execution. (32 Cal. App.2d at p. 592.)
Stack is factually similar to the present case where the decedent made similar declarations in his 1966 will that all property owned by him and his wife was community property. He also purported to dispose of all of the community property. Grace Wilson executed a similar will and also executed a consent form much like the one in Stack in which she elected to accept and acquiesce in the provisions of her husband's will. Thus, under the authority of Stack, even assuming the decedent and Grace Wilson actually intended to create a true joint tenancy in their property when they acquired title thereto, the trial court in the present case should have found that all of the jointly owned property was effectively *799 transmuted into community property in 1966 when the companion wills and consent form were executed and signed.
Respondents endeavor to distinguish Stack on two grounds: first, they argue that there was no evidence in Stack that the wife did not understand the transmutation agreement whereas in the present case Grace Wilson testified that she did not understand what she was signing. However, in Stack there is clear evidence that the wife did not understand the transmutation agreement; after her husband's death she asserted title to the securities kept in the safety deposit box as surviving joint tenant (32 Cal. App.2d at pp. 588-590). It must be presumed that had she understood the transmutation agreement she would not have made such a claim.
Second, respondents point to the fact that in Stack the husband and wife executed deeds terminating the joint tenancy two days before execution of the husband's will and the wife's consent (32 Cal. App.2d at p. 590), whereas no such deeds were executed in the present case. However, it is clear that the deeds which terminated the joint tenancy title in Stack applied only to the real estate owned by the spouses and had nothing to do with the securities held in the safety deposit box; nonetheless, the court held the transmutation agreement reached the securities. (32 Cal. App.2d at pp. 592-594.)
There are additional reasons why the trial court erred in failing to find the existence of a binding transmutation agreement in the present case. First, the declarations contained in the husband's will coupled with the wife's consent constituted a fully executed written contract declaring their property to be community property. (4) A written contract may be altered only by another written contract or an executed oral agreement, neither of which is present here. (Civ. Code, § 1698.) For example, in Chase v. Leiter, supra, 96 Cal. App.2d 439, a joint and mutual will between husband and wife recited that the separate and community property should all be deemed community. Prior to the husband's death, the wife took money from a bank account for her own personal use. It was held that the contractual terms of the will were not postponed until death but became effective when the will was executed and changed all the property to community; hence, the wife was not entitled to the money. (See also Flanagan v. Capital Nat. Bank (1931) 213 Cal. 664 [3 P.2d 307] (where a wife signs an instrument in which she elects to accept provisions and conditions of her husband's will including disposition of *800 the community property and where she waives all claim to the community property; such an acceptance and waiver is a written contract).)
Although decedent in his 1970 codicil professes to revoke the paragraph of his 1966 will which contained the transmutation agreement and agreed that his wife's consent attached to the 1966 will was a nullity, it is patently clear from the other provisions of the codicil that decedent merely intended to revoke his wife's consent to a forced election to take under the 1966 will. Most importantly, the 1970 codicil was not signed by Grace Wilson. Thus, there is no writing executed by both spouses which can be said to have altered or revoked the prior written agreement of 1966. (See 1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, pp. 29, 600 (there must be at least two parties to a contract; modification of a contract requires mutual assent).)
Nor is there any proof that the 1966 agreement was revoked by an executed oral agreement of the parties. As previously noted, by the decedent's 1970 codicil and Grace Wilson's 1970 will the parties merely intended to revoke the wife's consent to the forced election under the 1966 will; there is no evidence to show that they intended to rescind the 1966 transmutation agreement by changing the community property back to joint tenancy property.
Since there is no proof of a subsequent revocation either by written contract or by an executed oral agreement, the transmutation agreement of 1966 remained in effect to decedent's death.
(5) The second reason supporting the existence of the transmutation agreement to the date of decedent's death is the "conclusive" presumption provided by Evidence Code section 622. This section provides that "[t]he facts recited in a written instrument are conclusively presumed to be true as between the parties thereto, or their successors in interest, ..."
In Estate of Watkins, supra, 16 Cal.2d 793, a joint and mutual will was executed between a husband and wife declaring all property disposed of to be community property. In support of the holding that the transmutation agreement was effective and binding on the surviving spouse the Supreme Court stated: "... even if the declaration found in the joint and mutual will be treated merely as a recital in the written instrument executed by the spouses, the same result must follow as there is a *801 conclusive presumption of `The truth of the facts recited, from the recital in a written instrument between the parties thereto, or their successors in interest by a subsequent title; ...'" (Code of Civ. Proc., § 1962, subd. 2.) (16 Cal.2d at p. 798.)[4]
The conclusive presumption of section 622 is nothing more than the doctrine of "estoppel by contract." (Palermo v. Pyke (1952) 111 Cal. App.2d 350, 354 [244 P.2d 726]; Witkin, Cal. Evidence, § 297, p. 257.) Unless there is credible evidence showing that the transmutation agreement was altered or rescinded by the parties, the terms of the contract are binding on the parties and their successors.
(6a) Respondents have failed to produce sufficient evidence to rebut the existence of a transmutation agreement. Respondents' evidence on this point consists of testimony by Grace Wilson and Attorney Lawrence Baker.
Grace Wilson testified that she did not understand the consent form and that she was acting under circumstances of duress.[5] Respondents argue that this testimony constitutes substantial evidence to support a finding that Grace Wilson did not agree to a transmutation, citing Perkins v. West (1954) 122 Cal. App.2d 585 [265 P.2d 538]. Perkins, however, is distinguishable. In that case the decedent declared in his will that all of his property was community property with his wife. However, his wife was asked to leave the room while the will was being dictated. *802 From this fact the trial court inferred that the husband did not want his wife to hear his statement that all of their property was community property. The reviewing court held that there was insufficient evidence to show an agreement between decedent and his wife that joint tenancy property should be held as community property.
The facts of the present case are far different from Perkins. Grace Wilson admitted at trial that she had read her husband's will, she also signed the "wife's consent" in which she expressly declared that she had read her husband's will, fully understood it, and elected to accept and acquiesce in its provisions. Moreover, the record is devoid of any evidence that fraud or duress was used on Grace Wilson.
(7) Absent some credible evidence showing a lack of mutual assent, a surviving spouse's uncorroborated assertion that she did not understand what she was doing when she signed the consent form cannot be permitted to overcome the clear, explicit language in the document form. As stated in Fowler v. Security-First Nat. Bank (1956) 146 Cal. App.2d 37, 47 [303 P.2d 565]: (8) "A contract is indeed the result of objective manifestations of the parties. If those manifestations are sufficient [to establish a contract], the parties' subjective intentions or beliefs are wholly immaterial." (See 1 Witkin, Summary of Cal. Law, Contracts, § 88, pp. 92-93.) Stated otherwise, when a person with a capacity of reading and understanding an instrument signs it, in the absence of fraud or imposition he is bound by its contents, and he is estopped from saying that its provisions are contrary to his intentions or understanding. (Palmquist v. Mercer (1954) 43 Cal.2d 92, 98 [272 P.2d 26].)
(6b) Similarly, Attorney Baker's testimony is entitled to no weight. On direct examination he read a letter which he had written to Mr. Lewis Drolet of respondent Title Insurance and Trust Company after decedent's death. In that letter Baker stated: "I informed Mr. Eyherabide [respondents' attorney] that we were taking the position that all of the joint tenancy property should be included in Emmett's probate estate on the theory that it actually was community property, as stated in his will ..." Thereafter, on cross-examination Baker testified that after a meeting with Mr. Eyherabide and Mr. Drolet he was of the opinion that Grace Wilson was entitled to the property in question as a surviving joint tenant. Obviously, Mr. Baker's testimony which consists only of legal conclusions is irrelevant to whether the transmutation agreement was rescinded by the parties before the decedent's death.
*803 (9) We recognize that the trial court's finding that property is either separate or community is binding on an appellate court if supported by sufficient evidence or if it is based on conflicting evidence or on evidence subject to conflicting inferences. (Beam v. Bank of America, supra, 6 Cal.3d at p. 25.) However, a trial court's finding will be reversed if it is unsupported by competent evidence or if as a matter of law the evidence compels a contrary finding. (Sandrini v. Ambrosetti, supra, 111 Cal. App.2d 439, 449.)
From the explicit terms of the 1970 codicil we discern only one intent on decedent's part: to revoke Grace Wilson's forced election to take under the 1966 will and to give to decedent's heirs a one-half remainder interest in all of the property owned jointly with Grace Wilson including the property held in joint tenancy, subject to a life estate in Grace Wilson.
Decedent was a knowledgeable businessman who for many years had been the manager of a title company. Because of his background we can assume that he was generally familiar with the market value of his properties and had some idea as to the amount of taxes and family allowance that would be charged against his estate upon his death. The provisions in the will concerning the taxes and family allowance can only have been made by the decedent under the belief that his testamentary estate would be sufficient to pay the taxes and family allowance and yet leave a remainder for distribution to his heirs. He certainly would not have directed that the taxes on the joint tenancy property which comprises the larger part of his holdings be paid from the residue of his estate without the inclusion of that property in his estate. Thus, the exclusion from probate of the property not only violates the transmutation agreement of the spouses but thwarts decedent's testamentary intent by effectively depriving his intended beneficiary of her lawful bequest.
For the reasons expressed, we hold as a matter of law that in 1966 the joint tenancy property was effectively transmuted to community property, that it remained as community property to the date of decedent's death, and that it should have been included in decedent's probate estate.

*804 RESPONDENTS' OTHER CONTENTIONS HAVE NO MERIT
(10) Respondents' argument that this court lacks jurisdiction because appellant failed to notice an appeal prior to the respondents' discharge as coexecutors or to obtain a stay of proceedings under the decree of distribution, is without merit. Appellant has appealed from the decree of distribution of the estate which was entered on April 29, 1975; judgment was entered in favor of respondents and against appellant on May 5, 1975. Appellant filed a timely notice of appeal on May 29, 1975, within 60 days of both the decree of distribution and the entry of judgment. Under Probate Code section 1240, an appeal may be taken from an order determining the persons to whom distribution should be made. Thus, Nason v. Superior Court (1919) 39 Cal. App. 448 [179 P. 154], cited by respondents, is distinguishable as involving an appeal from an order refusing to discharge the administratrix of an estate. (39 Cal. App. at p. 450.)
(11) Respondents' contention that by failing to object to the amended report of the inheritance tax referee and the order fixing the inheritance tax, appellant is estopped to deny the joint tenancy status of the subject property is specious. The order fixing inheritance taxes is not binding on appeal except for tax purposes. (Estate of Connolly (1975) 48 Cal. App.3d 129, 132, fn. 4 [121 Cal. Rptr. 325]; Estate of Rath (1937) 10 Cal.2d 399, 406 [75 P.2d 509, 115 A.L.R. 836].)
(12) Respondents' contention that appellant should have pursued her rights in a court of equity rather than in a probate court is also deserving of little discussion. A probate court proceeding for distribution of assets is a proper proceeding to determine questions of title to property in which the testator has an interest. (Estate of Basso (1945) 68 Cal. App.2d 294, 299 [156 P.2d 476]; Estate of Horn (1951) 102 Cal. App.2d 635, 641 [228 P.2d 99].) In the present case, appellant sought resolution of the issue of title to property held of record in joint tenancy by the decedent and his surviving spouse and whether the property should be included for administration in the estate. Such an issue is properly resolved in the probate court.
(13) Finally, respondents' argument that appellant is contesting decedent's testamentary documents and has forfeited her rights pursuant to the "no contest" clause (par. 11, subpar. e, of the 1966 will) is without merit. Appellant's action is not a will contest nor is she challenging decedent's testamentary documents or any share or right *805 given to her under the will. Rather, appellant is seeking to determine the effect of an agreement between the decedent and his spouse pertaining to the character of the jointly owned property.
Although the word "contest" has been held to mean any legal proceeding that is designed to thwart the testator's wishes as expressed in his will (Estate of Kazian (1976) 59 Cal. App.3d 797, 802 [130 Cal. Rptr. 908]) appellant's action does not thwart the testator's testamentary intent but rather seeks to enforce that intent. In Kazian a second husband of a testatrix, by bringing an action independently of probate proceedings to have the entire estate declared community property (which if successful would have halved the estate) was held to have forfeited his legacy under the will because the testatrix after specifically declaring all property in his name to be her separate property, had clearly expressed her testamentary intent by leaving a small percentage of her estate to her second husband and bequeathing the bulk of her estate to her children by her first marriage and to her grandchildren. (59 Cal. App.3d at pp. 802-803.)
Unlike the situation in Kazian, appellant is seeking to carry out the provisions of decedent's will by forcing the inclusion of all assets jointly owned by decedent and his spouse into the estate for probate purposes and for distribution in accordance with the terms of the will.
Respondents' other contentions have been considered and found to be without merit.
The judgment in favor of respondents, the order settling the first and final account and report of the coexecutors and the decree of final distribution are reversed. The matter is remanded to the superior court with directions to find as a matter of law that the total estate of the decedent amounting to $926,944 is community property; that a new account, report and distribution of the estate be prepared in accordance with this opinion.
Gargano, Acting P.J., and Thompson, J.,[*] concurred.
A petition for a rehearing was denied January 6, 1977, and respondents' petition for a hearing by the Supreme Court was denied February 3, 1977.
NOTES
[1] The record shows that Grace Wilson's 1966 will was destroyed or lost. However, she testified that her will was similar to her husband's "except that it wasn't as long." She stated:

"Q. But at or about the time that you signed the consent, I believe you testified earlier that you did sign a Will which was similar to his Will except it wasn't as long; is that right?
"A. Yes.
"Q. All right.
"A. Well, Mr. Stinson used all these legal words and, naturally, they would be similar, I suppose.
"Q. Well, do you remember reading a Will of yours at that time?
"A. Yes, of course.
"Q. And did you read Mr. Wilson's Will at that time?
"A. Yes.
"Q. And were the two Wills substantially similar?
"A. Yes, they were similar.
[2] Also on March 16, 1970, Grace Wilson revoked her prior will of 1966 which she had executed jointly with her husband, and she executed a new will. In the latter will Grace Wilson revoked her consent to her husband's disposing of all the community property. (Last will and testament of Grace Wilson, par. 17.)
[3] The courts have been exceedingly liberal in finding that the presumption created by a joint tenancy deed has been overcome by extrinsic evidence showing that the spouses always intended to retain the community character of the property. (Tomaier v. Tomaier, supra, 23 Cal.2d 754; Martinelli v. Cal. Pac. Title Ins. Co. (1961) 193 Cal. App.2d 604 [14 Cal. Rptr. 542]; Bowman v. Bowman (1957) 149 Cal. App.2d 773, 777 [308 P.2d 906]; Sandrini v. Ambrosetti (1952) 111 Cal. App.2d 439 [244 P.2d 742]; Estate of Jameson, supra, 93 Cal. App.2d 35; Chase v. Leiter (1950) 96 Cal. App.2d 439 [215 P.2d 756].)
[4] Code of Civil Procedure, section 1962, subdivision 2, has been replaced by Evidence Code, section 622.

Compare Miller v. Criswell (1942) 54 Cal. App.2d 524 [129 P.2d 450], where the conclusive presumption was held not to apply in a conveyance from a wife to her husband of her interest in property held by them in joint tenancy. The wife was inexperienced in business matters and was divested of her interest without the benefit of advice from an independent attorney or from any person other than her husband and his adviser. The court also noted that the only possible consideration for the deed of conveyance was that the husband procure a divorce, which consideration was illegal and against public policy. Finally, the wife, upon discovery of her husband's fraud after divorce, immediately made demand on her former husband for a reconveyance of her interest. The conveyance was rescinded and the Code of Civil Procedure, section 1962, subdivision 2, presumption (now Evid. Code, § 622) was held inapplicable.
[5] Grace Wilson testified that upon reading the 1966 will she remarked, "This doesn't sound right." She said she signed because she "trusted her husband" and "foolishly did not understand what she was signing." Grace Wilson, however, did not testify that she did not understand the terms of her own will which she executed in 1966 and which was "similar" to her husband's will, nor did she state that she did not understand that all of the joint tenancy property was held by her and her husband as community property.

Importantly, there is no evidence whatsoever to support Grace Wilson's testimony that she was acting under "duress" when she signed the consent form.
[*] Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.