[Civ. No. 55634. Second Dist., Div. Four. June 15, 1981.]

In re the Marriage of SHELLEY KAREN and
MARVIN MORRIS LOTZ.
SHELLEY KAREN LOTZ, Respondent, v.
MARVIN MORRIS LOTZ, Appellant.

380

COUNSEL

Lionel S. Sobel, Gary Freedman and Freedman & Sobel for Appellant.

Spector, Buter & Cone, Irwin Buter and Edward J. Horowitz for Respondent.

OPINION

KINGSLEY, J.—Husband appeals from an interlocutory judgment dissolving the marriage.

In 1968 the parties married and formed a corporation "Your Own Things, Inc.," which manufactured ladies' clothes. Nine years later the parties separated and their community estate was in excess of $1.2 million. Husband's earnings in the two preceding years was $100,000. Income to husband from the family corporation was $126,000. The home had a net value of $408,000 and the court valued the stock of the family corporation at $469,000. The court awarded the family residence to the wife, the corporation to the husband, and various other assets to each. The court found certain furs and jewels to be the wife's separate property and included in the community property $15,700 withdrawn by husband from the family corporation, noting that this sum was not included in calculating the value of the corporation's stock.

I

■ Appellant argues that the trial court used an improper method to value a closely held corporation owned by the parties. The court in finding of fact No. 6 set forth the method it used to determine the value of the corporation. That finding reads in part as follows:

"e. The Court finds that a fair and reasonable method of evaluating market value of the corporation is the ratio of earnings method, using a multiplier of 7, a method explained and utilized by petitioner's expert witness, Weaver, in his determination of the value of $595,000.

"f. The Court finds that the 1977 pre-tax earnings of $47,969.00, plus an increase of $24,000, rather than the $60,000 increase used by Weaver, is reasonable; and therefore the calculation found by the Court to be correct and proper is 7 times $67,000, or a $469,000 market value.

"g. The Court finds that the multiplier of 7 times earnings, as used by the expert and by the Court, with the adjustments heretofore described, is a proper and appropriate figure for evaluation of Your Own Things, Inc.

"h. The Court finds: that good will of the corporation is valued at $319,000; that a covenant not to compete would be required of a seller; that the Respondent is incidentally engaged in sales for the corporation but is primarily engaged in management, which latter function of his is necessary for the success of the business. Petitioner retired from an active part in the business in 1975 to care for the said minors."

Thus the court found the tangible corporation assets to be worth $150,000, and the corporation's goodwill to be worth $319,000. The court valued the corporation at $469,000 and awarded the corporation to the husband.

### A

Appellant argues that, in order for the husband to actually obtain the value used by the Weaver method (the method used by the wife's expert witness), the husband would either have to continue to work for this corporation after its sale, or the husband would have to work in another field, since the Weaver method required the husband to give upon sale of the business a covenant not to compete. (See finding of fact No. 6, part "h," *supra.*) Husband argues that this valuation method, which requires of the seller a covenant not to compete, is fatally defective, because community goodwill in a business "may not be valued by any method that takes into account the post-marital efforts of either spouse." (*In re Marriage of Foster* (1974) 42 Cal.App.3d 577 [117 Cal.Rptr. 49].) Appellant argues that if husband cannot compete with the buyer after he sells his business, that method of evaluating the corporation is taking into consideration his "post marital effort," i.e., an effort of husband "that must be withheld." Stated another way, the husband reasons that, since a covenant not to compete restricts husband's activities after marriage, the husband's postmarital conduct has been included in determining the corporation's value. The court was not in this finding requiring that the husband not actually compete, but was simply evaluating the corporate goodwill by taking into account the commercial reality that such a covenant is normally included in the sale if a closely held business.

In the case at bench the goodwill was determined without taking into account any potential or continuing income of husband or wife.

### B

Husband also argues that the partners' closely held corporation was evaluated by multiplying its pretax earnings by seven, and that this particular formula is properly used in evaluating public rather than private corporations. The wife's expert, Mr. Weaver, testified that he inspected figures published by Standard & Poors for some 5,100 public

corporations. This witness stated that the price earnings ratio for publicly traded companies who manufactured only women's clothing ranged from 7.5 to 9.4. The witness also testified that he made no concerted effort to find prices for closely held corporations, claiming that this information is not usually available.

We agree that the price earnings ratios of publicly traded corporations have little relevance in valuing a closely held corporation. There are enormous differences between the two types of corporations. The sales volume of publicly traded corporations is much higher than the volume of closely held corporations. The stock in a publicly traded corporation has liquidity value because its owners can sell stock and get money in a matter of days, whereas the stock in "Your Own Things" has no liquidity value. There is less risk in owning stock in public corporations because they can "miss on two or three lines" without being hurt too much. Finally, the cost "to go public" is between $150,000 and $200,000 for legal and accounting fees. Therefore, there is no substantial support for the use of the above formula in evaluating a closely held corporation, even considering the attempts to adjust the formula.

The case of *Estate of Rowell* (1955) 132 Cal.App.2d 421 [282 P.2d 163] examined the question of determining fair market value of stock in a closely held corporation. (See also Kragen, *Some Thoughts on the Valuation of Closely Held Business Interests* (1955) 43 Cal.L.Rev. 781, 786.) The court in the *Rowell* case stated that one method that has been suggested for determining the value of the stock was to consider the history, the balance sheet, the future market, and possible future earnings. The *Rowell* court also stated that a proper method for valuating the market value of stocks in a closely held corporation is to ascertain the value of the property the shares represent, and then assign to each share in the closely held corporation its proportionate worth. (See, also, *Common Wealth Ins. Systems Inc.* v. *Kersten* (1974) 40 Cal.App.3d 1014, 1031 [115 Cal.Rptr. 653].) Although the *Rowell* court recognized that this is but one way of many ways of determining market value in a closely held corporation, there is nothing in that case to support the wife's expert's opinion in the case at bar that it was appropriate to use the same formula used to determine value of a closely held corporation as is used to determine the value of a public corporation. In short, the wife's expert based his valuation on an invalid assumption. For that reason it cannot stand.

## II

■ Appellant argues that the trial court abused its discretion by requiring the husband to buy the parties' closely held corporation from the wife against the husband's wishes. Husband argues that, since this was a commercial enterprise and not a professional practice, this business could have been awarded to both spouses.

Under Civil Code section 4800, subdivision (b)(1)[1] a court may award an asset to one party in order to effect a substantially equal division of community property, and section 4800 vests considerable discretion in the court. (*In re Marriage of Connolly* (1979) 23 Cal.3d 590 [153 Cal.Rptr. 423, 591 P.2d 911].) Nothing in Civil Code section 4800 requires a distribution in kind. (*In re Marriage of Emmett* (1980) 109 Cal.App.3d 753 [169 Cal.Rptr. 473]; *In re Marriage of Fink* (1979) 25 Cal.3d 877, 885 [160 Cal.Rptr. 516, 603 P.2d 881].) The trial court may divide community property where warranted by methods such as awarding an asset to one spouse conditioned on later payments or by making offsetting awards of community assets. (*In re Marriage of Brigden* (1978) 80 Cal.App.3d 380, 389 [145 Cal.Rptr. 716].) Strict in-kind division may cause, rather than avoid, financial inequities. (*In re Marriage of Connolly* (1979) 23 Cal.3d 590 [153 Cal.Rptr. 423, 591 P.2d 911].) Further, it has been said that, although the determination whether division is possible without impairment must be flexibly made, if the stock holdings are in a close corporation, an award of an entire block of stock to the husband may be justified. (See, dicta in *In re Marriage of Brigden, supra*, 80 Cal.App.3d 380, 390-391.)

We have reviewed the arguments here made by the husband to show that, in this case, there is no economic reason for distributing all of the corporate stock to the husband. We conclude that those arguments ignore one elemental economic factor involved in the distribution of a family business. There may be situations in which a husband and wife, although unable to live harmoniously as such, may still have respect for each other's business acumen and are capable of continuing as partners though not as spouses. Ordinarily, however, as litigation in this court tells us, a dissolution of marriage involves such interpersonal hostility as to make any postdissolution business companionship impossible.

---

[1] "(1) Where economic circumstances warrant, the court may award any asset to one party on such conditions as it deems proper to effect a substantially equal division of the property."

The record before us does not enable this court to determine whether the couple herein involved could, although their marriage is dissolved, still operate it effectively as coowners. On remand, the trial court should make such inquiry as will enable it to decide and make appropriate findings on that issue.

## III

 Husband argues that the trial court erred in finding certain jewels and furs given by husband to wife were transmuted from community property to wife's separate property. Whether or not there is a transmutation from community property to separate property where personal gifts such as furs or jewels are given on special occasions such as birthdays or anniversaries should be determined on a case by case basis, after examining all the facts and by drawing inferences therefrom. In the case at bench there were sufficient facts from which the court could imply such an agreement to transmute the furs and jewels to separate property and an implied agreement is all that is required.

However, the wife is nevertheless precluded from claiming the gifts of furs and jewels as her separate property by the declaration in their companion wills in which both husband and wife declared that all property in either of their names or both their names was community property. It is settled that joint or companion wills executed by spouses and declaring their property to be community property may change its character from separate to community property, (*Estate of Wilson* (1976) 64 Cal.App.3d 786, 798 [134 Cal.Rptr. 749]) and the effective date of the change is the date the will was executed. The wife herein is bound by the provision in her will declaring this property community property. (See Evid. Code, § 622 creating a conclusive presumption.)

## IV

 Husband claims the trial court erred in ruling that $15,700 borrowed by husband from the parties' closely held corporation was a community asset to be split by the wife. We agree with husband that money borrowed from the corporation is an asset of the corporation, and not a sum owed the community estate. Even though the husband withdrew the money from the corporation and spent it on his postseparation personal expenditures, the $15,700 borrowed from the corporation is an asset of the corporation and must be treated as such. We note

that this sum owed the corporation was not included in calculating the value of the corporation's stock, and that the court undoubtedly reasoned that this sum was therefore not an asset of the corporation. However, the borrowed money should have been included in the evaluation of the corporation's assets, and it also should have been considered an asset of the corporation and not an asset of the community.

The judgment is reversed for further proceedings consistent with this opinion.

Files, P. J., and Woods, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied August 12, 1981.