[No. F007093. Fifth Dist. June 30, 1986.]

In re the Marriage of VIRGINIA K. and RICHARD E. SCHOETTGEN.
VIRGINIA K. SCHOETTGEN, Respondent, v.
RICHARD E. SCHOETTGEN, Appellant.

## COUNSEL

Gorgas & Lamb and E. L. Gorgas for Appellant.

Michael A. Antoncich for Respondent.

## OPINION

**WOOLPERT, J.**—The appeal is taken from an interlocutory judgment of dissolution of a 25-year marriage. We are asked to review only the part of the judgment finding a particular piece of improved real property to be community property by transmutation, rather than the separate property of the husband. The property is situated in Columbia, California. By order of the Supreme Court we are instructed to do so in light of its recent opinion in *In re Marriage of Fabian* (1986) 41 Cal.3d 440 [224 Cal.Rptr. 333, 715 P.2d 253].

Following good trial practice, the court first heard the "transmutation" issue which concerned one of the two major property interests of the parties. The court applied the existing law to its finding of community property, resulting in no reimbursement to the husband, whose parents had owned the property during most of the time involved. Since the trial, however, the Legislature modified the law in certain respects. The new statute was worded so it would apply retroactively in this case; however, in *Fabian* the court ruled such retroactive application to be unconstitutional. *Fabian*, therefore, settled the heretofore previously unresolved issues which were present and formerly required reversal of the judgment by this court. We therefore affirm.

### THE FACTS

Appellant (Husband) and respondent (Wife) were married in March of 1956. They moved a mobilehome onto the Columbia property and lived in it. At that time, legal title to the Columbia property was held in the name of Husband's parents (Mother and Father). Their move onto the property was with the parents' consent.

Husband and Wife intended to build a house on the Columbia property. They went as far as consulting an architect, making some plans, and staking the foundation before abandoning the project. Later they purchased a larger mobilehome and continued to live on the property. After residing there over 15 years, they moved to a house located elsewhere which they purchased together.

In 1977, Mother died. Father had predeceased her. Husband and Wife then did substantial repairs to the parents' residence. The repairs were made through community effort and with community funds. The house was rented and the rental income was used for upkeep and repair of the house, with any balance being commingled with community funds.

On the title question, the testimony of Husband and Wife was severely conflicting. According to Wife, Mother and Father *gave part* of the Columbia property to Husband and Wife. Husband and Wife were given one-half of the property pursuant to a verbal agreement with Father's attorney. The gift idea had been discussed between Mother and Father. At times Husband and Wife paid taxes on the entire property, including Mother's one-half prior to her death. The portion of the property actually used by Husband and Wife was approximately one-half of the total property. Mother and Father used the other half. The property was referred to as "our" property by all concerned. No rent was ever paid for use of this property. Husband even referred to the property as "our property" after Mother died. After Mother's death, Husband, Wife, and Husband's aunt went to the recorder's office with the intention of changing the property into the names of Husband and Wife. They were unable to do so because they did not bring enough money.

According to Husband, Mother and Father told Husband and Wife they could move a mobilehome onto the property, or even build on it, but the idea of it being a gift was never discussed. Likewise, Husband never intended to give it to Wife. Throughout her lifetime, Mother paid all taxes on all of the property. The only exception might have been while the Mother was ill, just prior to her death. Only Wife referred to the property as "ours." Husband never corrected her, and saw the phrase as merely a figure of speech. Although he, Wife, and aunt went to the recorder's office, they did so with the purpose of changing the property into Husband's name only.

In anticipation of divorce, but prior to either Husband or Wife consulting an attorney, Husband made a list of the property he believed to be community property. Included on the list was the Columbia property. This list was entered into evidence over objection by Husband. In describing why Husband gave her the list, Wife characterized it as Husband's proposal to settle

without an attorney. Husband testified that he included the Columbia property on the list because he had mistakenly believed the law made the property a community asset. He had not consulted an attorney at the time of making the list.

## I.

### Transmutation of Separate Property; Compromise Admissions

■ "[I]t is well settled that property may be converted into community property at any time by oral agreement between the spouses . . ., and an agreement at the time the property is acquired has the same effect." (*Tomaier v. Tomaier* (1944) 23 Cal.2d 754, 757-758 [146 P.2d 905].) The parties do not question this rule. ■ ■ However, Husband argues the evidence of oral transmutation was inextricably supported by the admission of his offer of compromise.

Husband's theory was that the document was part of a settlement agreement and, therefore, was inadmissible under section 1152 of the Evidence Code. Wife's attorney argued that the document could not be a settlement offer since no litigation was pending at the time. The court agreed and overruled the objection on the grounds that it was not an offer to settle litigation because the point of settlement of litigation had not been reached at the time the document was written. Also, the court viewed the document as a simple acknowledgement by Husband of what community property the parties owned.

The day after the hearing, the court issued an ex parte order, ruling that the Columbia property had become community property. The court reasoned, "By his word and conduct the [Husband] manifests his intent that the property become community property. This includes reference as to the property as 'our property', the making of repairs with community property money and with community property labor, and the treatment of rent as community property. The Court finds the property had become community property."

At a motion to reopen, Husband challenged the sufficiency of the evidence underlying this decision by arguing the court had erroneously admitted Husband's property list in evidence. He wanted to present further evidence intended to refute each of the factors relied upon by the court when it found the property ownership had been transmuted. With those factors eliminated, Husband theorized, the finding of community property would be reversed. Husband suggested the court had erred in overruling his objection on the basis that pending litigation was required. He did so by reference to *Georgia-*

*Pacific Corp.* v. *California Coastal Com.* (1982) 132 Cal.App.3d 678 [183 Cal.Rptr. 395]. In *Georgia-Pacific,* the court stated: "The trial court's finding that the offers were made in 'attempted compromise of litigation' is supported by the evidence of them in the administrative record. The relevance of an offer of compromise, as an 'admission of conduct,' is overridden by the 'public policy in favor of settlement of disputes' which underlies Evidence Code section 1152. [Citations.] The policy applied here even if the precise language of the statute did not, and its application was not affected by the fact that litigation was not pending when the offers were made by Georgia-Pacific. [Citation.] The exclusionary ruling challenged here was correct." (*Id.,* at p. 693.)

While acknowledging a need to review the recent *Georgia-Pacific* case, the court discussed the basis for its conclusion, omitting any reference to the list. Principal reliance was placed on the long period of conduct of the parties which, coincidentally, was consistent with the list. As to *Georgia-Pacific,* the court stated: "I don't base my ruling on the fact that there was no lawsuit in existence. I want that to be clear." The paper was simply a list, nothing more. In rejecting an offer of more testimony concerning the intention of Husband's parents, the court emphatically stated the trans-mutation was based upon the conversations and conduct of the Husband and Wife and no reliance was placed on evidence offered to show the parents had bound themselves to grant or leave the property in any particular way.

We note the court had already heard Husband's testimony that he did not correct Wife when she referred to the property in terms of "ours," and in fact had no reason to correct her because, by his own testimony, he too thought it was community property. Husband admitted he did not learn he could make a separate property claim until he consulted with his counsel for these proceedings. The parties had lived on the property many years, improved it, treated it as jointly owned property and, assuming the truth of Wife's testimony, had even gone to a county office in an aborted attempt to place title in both names.

The trial court heard nothing to indicate Husband included the Columbia property on the list as a concession of some kind. To the contrary, Husband, even to this day, would presumably testify that the longtime belief of both parties was that the property had become community property. His testimony in this respect lent credibility to Wife's testimony. Although not then con-sidered to be of significance, the record title remained in the parents' names for all the years concerned. The probate proceedings were started concur-rently with the present proceeding.

In its tentative decision, the trial court again found the property list admissible, stating: "It appears to the Court that Exhibit 1 contains a list

of what [Husband] honestly believed to be community property, to be divided, and that he intended 'to admit liability and to seek to buy or secure relief against a liability recognized as such,' and 'to exact all that he deemed himself entitled to,' as in the rule stated above. Indeed, his own testimony supports this. He does not testify that in making up Exhibit 1 that he listed as community items which he though[t] to be his separate property, in an effort to compromise conflicting claims. Instead, he testified that he believed the Columbia property was actually community property at that time, and did not change his view until conferring with his attorney later. There is no evidence whatsoever that in compiling Exhibit 1 he gave up anything which he felt (at that time) was his. So it is an admission, not an offer to compromise, and is therefore admissible."

Evidence Code section 1152 provides, in pertinent part, as follows: "(a) Evidence that a person has, in compromise or from humanitarian motives, furnished or offered or promised to furnish money or any other thing, act, or service to another who has sustained or will sustain or claims that he has sustained or will sustain loss or damage, as well as any conduct or statements made in negotiation thereof, is inadmissible to prove his liability for the loss or damage or any part of it."

We need not engage in a detailed analysis of the section. Cases may be found which seem to support the contentions of each party. (*Rose* v. *Rose* (1896) 112 Cal. 341, 344 [44 P. 658], admissions nevertheless admissible.) In more recent times the section has been given greater prohibitory effect. (Witkin, Cal. Evidence (2d ed. 1966) Circumstantial Evidence, § 379, pp. 337-338.)

Ordinarily, until there is a dispute, there is no controversy to negotiate. When Husband prepared his list he was in agreement with Wife as to community property ownership. If there was even a borderline "controversy," it would result from his suggested manner of dividing the property or value placed upon it. The parties had separated and were trying to avoid the cost of attorney fees. When the list was prepared the parties had not "reached a stage of clear disagreement." (*Warner Constr. Corp.* v. *City of Los Angeles* (1970) 2 Cal.3d 285, 297 [85 Cal.Rptr. 444, 466 P.2d 996].) This is so if we look only to the thoughts of the parties concerning property ownership.

More realistically, Husband was preparing for a possible argument over the division of property, and thus may well have started a process of "negotiation" which brought his list within the protection of the law. "The purpose of section 1152 [is] to promote candor in settlement negotiation. . . ." (*Ibid.*) We need not resolve this close question because Husband was not prejudiced by the court's ruling. (*Id.*, at pp. 299-300.) Assuming the

court erred in admitting Husband's "list," the question remains whether the evidence which was properly admitted at the hearing was sufficient to sustain the verdict, thereby rendering the error harmless. (6 Witkin, Cal. Procedure (2d ed. 1971, pt. 1) Appeal, § 303, p. 4286.)

■ The standard for review of the sufficiency of the evidence in a civil case is well established: "In reviewing the evidence on such an appeal all conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. It is an elementary, but often overlooked principle of law, that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the [trier of fact]. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court. [Citations.]" (*Crawford* v. *Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183].)

■ We will not presume Husband testified differently because of the admission of his list of property. He believed the Columbia property was being acquired as the common property of the marriage. Later, when he first saw an attorney, he learned of other possibilities. Presumably he would have similarly testified if there had been no list. We therefore assume he would again give the same response if asked that simple ownership question on cross-examination during a new trial. His list declared no more than his belief at the time, a belief he was permitted to explain. Husband would not have obtained a more favorable result if the exhibit had been excluded. In fact, the trial court made that clear during the argument.

The trial court had a duty to view the evidence in its parts and as a whole. Its discussion with counsel indicates it did so and found the cumulative effect of the evidence was supportive of Wife's testimony. There was ample evidence to conclude the parties expressly agreed to the community ownership of the Columbia property; an implied agreement would suffice. (*In re Marriage of Lotz* (1981) 120 Cal.App.3d 379, 386 [174 Cal.Rptr. 618].) Although the testimony was often in direct conflict, on appeal we resolve factual conflicts in support of the verdict. (*Crawford* v. *Southern Pac. Co.*, *supra*, 3 Cal.2d at p. 429.)

## II.

### CIVIL CODE SECTION 4800.2

■ Because we affirm the community property finding, the question arises whether Husband is entitled to reimbursement pursuant to Civil Code section 4800.2. He is not.

Section 4800.2 provides as follows: "In the division of community property under this part unless a party has made a written waiver of the right to reimbursement or signed a writing that has the effect of a waiver, the party shall be reimbursed for his or her contributions to the acquisition of the property to the extent the party traces the contributions to a separate property source. The amount reimbursed shall be without interest or adjustment for change in monetary values and shall not exceed the net value of the property at the time of the division. As used in this section, 'contributions to the acquisition of the property' include downpayments, payments for improvements, and payments that reduce the principal of a loan used to finance the purchase or improvement of the property but do not include payments of interest on the loan or payments made for maintenance, insurance, or taxation of the property." The Legislature has expressed an intent that section 4800.2 be applied to cases such as this one, even though any purported agreement to transmute the Columbia property occurred prior to the section becoming law. Nevertheless, the Supreme Court has held such retroactive application to be unconstitutional because vested property interests are impaired. Such impairment violates due process when, as here, no significantly important state interest is promoted by retroactive application. (*In re Marriage of Fabian, supra,* 41 Cal.3d at pp. 443, 448-451.)

The judgment is affirmed. Costs on appeal are awarded to the prevailing party, in this case respondent.

Franson, Acting P. J., and Best, J., concurred.