Ken TIPTON, Plaintiff—counter-defendant—Appellant,

v.

Seth WARSHAVSKY, an individual, Defendant—Appellee,

and

Internet Entertainment Group, Inc., a Corporation, Defendant—counter-claimant—Appellee.

No. 00–56704.
D.C. No. CV–98–07520–R.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 5, 2002.

Submission Vacated Feb. 5, 2002.

Resubmitted Feb. 22, 2002.

Decided Feb. 27, 2002.

Before BOOCHEVER, RYMER, and T.G. NELSON, Circuit Judges.

## MEMORANDUM *

Ken Tipton appeals the district court's grant of summary judgment in favor of Internet Entertainment Group, Inc. and Seth Warshavsky (IEG). As triable issues of fact exist, we reverse.

### I

■ IEG argues that there was no meeting of the minds because IEG believed that the primary content of the site involved two teenage virgins engaging in sex for the first time, whereas Tipton knew that this content would not be provided on the site. However, there is no evidence that content of the website was discussed during negotiations or that content rather than, say, number of anticipated hits, was material. IEG's uncommunicated, subjective beliefs are immaterial. *In re Estate of Wilson,* 64 Cal.App.3d 786, 134 Cal.Rptr. 749, 758 (1976). To the extent that the meaning of the term "our-firsttime.com website" is ambiguous, whether there was a meeting of minds on what IEG agreed to host and Tipton to provide cannot be ascertained except by resort to parol evidence. This presents a factual issue that cannot be resolved on summary judgment.

■ Nor is IEG's breach excused as a matter of law by failure of a condition precedent. IEG suggests that it is, because the only reasonable interpretation of the term "ourfirsttime" is that it refers to a website with 18 year-old virgins having sex. Yet no such condition appears in the agreement (which IEG drafted), and there is no evidence that Warshavsky indicated, and Tipton agreed, that content approval was a condition to hosting the site.

■ IEG asserts that its breach was excused by fraud or unilateral mistake because Tipton knew or had reason to know of a mistake or failed to disclose material facts knowing they were not known or reasonably discoverable by IEG. While it may be that Warshavsky believed that Tipton planned to show sex on the website, there is no evidence that he relied on anything that Tipton told him in formulating this belief. Likewise, evidence that Tipton *assumed* that Warshavsky *assumed* that the website would show sex does not establish that this was a material fact on which the parties' intentions were manifest.

■ IEG also maintains that the contract fails because it had an unlawful purpose—advertising an event that Tipton had no intention of delivering. However, the obligation that IEG undertook in the contract was to provide technical support for the website. There is nothing about *that* purpose which appears unlawful. Be-

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

cause the agreement can only arguably become unlawful in light of extrinsic evidence, this defense cannot be resolved as a matter of law.

Tipton's remaining contract claims similarly raise triable issues of fact. Viewing the evidence in the light most favorable to Tipton, Warshavsky agreed to keep the content of the website confidential before Tipton told him the story line. And what the parties meant by advertisements "similar to" specified language is ambiguous, requiring consideration of extrinsic evidence.

▮ IEG submits that regardless of liability, Tipton has not suffered recoverable damages as a result of its alleged breaches of contract and fraud. Although this is a close call because most of the bases upon which Tipton claims lost profit appear purely speculative, his website had been receiving a large number of hits and his expert's declaration indicates that the site could have produced advertising revenue and income from sale of demographic information. While it seems unlikely that Tipton could prove substantial damages, we cannot say it is impossible as a matter of law.

## II

▮ Whether Tipton is a limited public figure, and must prove actual malice by clear and convincing evidence, is a question of law. *Stolz v. KSFM 102 FM*, 30 Cal.App.4th 195, 35 Cal.Rptr.2d 740, 744 (1995). We believe that he is, because he voluntarily involved himself in public life by inviting attention and comment on ourfirstime.com. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 344–45, 351, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974); *Stolz*, 35 Cal.Rptr.2d at 746 (deeming owner of media outlet limited public figure even in absence of public notoriety).

▮ Of the statements claimed by Tipton to be defamatory, we cannot see how it was defamatory for IEG to assert that Tipton intended to make money, wanted to get back at the religious right, or redirected the site to Disney to be vindictive. Claims about motives are not verifiable, and most readers do not understand such claims to be statements of fact. *See, e.g., Underwager v. Channel 9 Australia,* 69 F.3d 361, 366–67 (9th Cir.1995). However, triable issues are raised with respect to IEG's accusation that Tipton was trying to steal millions of dollars in site admission fees and left a hotel without checking out after IEG exposed him. There is a dispute about whether Tipton was going to charge admission fees, let alone "steal" them, and we cannot say that it was reasonable as a matter of law for IEG to rely on an investigation of less than 24 hours by its investigator, whose credentials are not in evidence, before falsely indicating that Tipton failed to pay a hotel bill. While there is no evidence from which the trier of fact could find that IEG actually knew of either statement's falsity, there is a enough to raise a triable issue whether it acted with reckless disregard for truth or falsity. Similarly, a triable issue of fact exists regarding IEG's statement that Tipton is a "scammer," because the statement connotes a claim that Tipton was lying or perpetrating a fraud.

REVERSED.