[No. A032806. First Dist., Div. Five. June 12, 1987.]

In re the Marriage of CAROL A. and WILLIAM T. STALLWORTH.
WILLIAM T. STALLWORTH, Appellant, v.
CAROL A. STALLWORTH, Respondent.

744

COUNSEL

Sandra Blair and Blair & LeGrand for Appellant.

Nathan Cohn and Carlos A. Fernandez for Respondent.

OPINION

KING, J.—In this case we hold as follows: (1) although the trial court possesses broad discretion to make a family home award, it is reversible error to make such an award for a 10-year period when no evidence has been presented from which the court could have determined that the adverse economic, emotional and social impact on the minor child resulting from the immediate sale of a long-established family home outweighs the economic detriment to the noncustodial spouse resulting from the delay in receiving his or her community share of the equity in the family home; (2) when a family home award is made, title to the home should be changed from joint tenancy to tenancy in common; (3) the parent receiving a family home award should maintain insurance coverage on the home naming the other parent as coinsured; (4) when an order for temporary support is made with the expectation that the spouse residing in the home will make the payments thereon, loans made by that spouse for that purpose are the separate obligation of that spouse, not community obligations; (5) during the period between separation and the issuance of an order for temporary support, the court has discretion to allow a spouse requiring support to use reasonable amounts of community funds for that purpose without being

charged for the funds used. The measure of what is reasonable is the amount which the court would have ordered for support during that period; (6) community funds placed in an account in trust for a minor child of the parties under the California Uniform Gifts to Minors Act are divisible as community property upon dissolution absent written consent, written ratification, waiver or estoppel; (7) the trial court possesses broad discretion in fixing the duration of spousal support and it is not an abuse of discretion to refuse to fix a timetable for the supported spouse to become employed or show cause why support should be extended, even though, under the facts, it would be preferable to do so.

William Stallworth appeals from a judgment of dissolution of marriage. He asserts multiple errors in the classification and distribution of certain assets, and in the failure to fix a duration for spousal support.

William and Carol Stallworth were married 14½ years and had one son, Robert, born November 30, 1976. They separated in October 1983, and William filed for dissolution in February 1984. The matter came to trial in April 1985. Although William filed objections to the trial court's proposed statement of decision, they were rejected.

I

THE FAMILY HOME

It was undisputed that the Stallworth family home, the parties' major asset, was community property. The court found it had a fair market value of $138,250 with a loan balance of $16,000, for an equity of $122,250. In making its disposition of the home the court found "that the mental condition of the minor child of the parties and the financial condition of the parties require that [Carol] and the minor child be allowed to live in the family residence until the said child shall reach the age of 18 years, dies, marries, becomes otherwise emancipated, or until [Carol] remarries, discontinues her residence at said residence, or resides therein with a male with whom she is cohabiting who also resides at said residence. Upon the happening of any of the above circumstances, the residence shall be placed on the market for sale and the proceeds of said sale divided equally between the parties. [Carol] shall pay all mortgage payments, taxes, upkeep, and homeowners association payments on the said residence while she resides there."[1]

---

[1] In reaching the decision to defer sale of the family home the trial court stated it took into consideration that William "is also receiving a reduction in spousal support payments." We know of no authority to defer the sale of the family home over the objection of the supporting spouse, because the supporting spouse will then be able to pay less spousal support. Of course, to the extent Carol's house payments are low, her needs are less and less spousal sup-

 The court left title to the home in the names of the parties as joint tenants.[2]

The testimony was uncontroverted that Robert was under a psychiatrist's care, was in a special education program at school, and attended a private reading program at the school's recommendation. These facts, standing alone, are insufficient to support an inference that a move from the family home would have an adverse social or emotional impact on Robert. There was no evidence that Robert's circumstances would be adversely affected by a move from the family home or, if so, that the effect would offset the economic detriment to William of deferring his receipt of his community share of the equity in the home for a 10-year period.

Carol testified she could not obtain equivalent housing in the same district for a comparable price ($238 per month for mortgage, taxes and insurance). The court reduced William's family support obligation by $150 in light of the low house payments on the family residence.[3] There was no evidence as to whether and at what cost Carol could obtain comparable housing in the same neighborhood or school district, although she believed the cost would be greater. If a sale causes Carol's housing cost to increase, this increased need should result in higher support. (See fn. 1, *ante*.) Finally, Carol presented no evidence to justify continuing the family home award, if any, for 10 years, until Robert reached the age of 18.[4]

 Since Civil Code section 4800.7 provides that a "family home award" means "an order that awards *temporary* use of the family home," the evidence would have to justify a family home award for a 10-year period. (Italics added.) Even if the evidence justifies a family home award,

---

port should be ordered. The determination to defer sale of the family home to permit the custodial parent and the child to remain in the home, as we will discuss, violates the requirement for equal division of community property under Civil Code section 4800, unless ordered as a factor of child support. If the sale of the family home would cause the custodial spouse to incur higher housing costs, the remedy is to order higher child and spousal support, not to defer sale of the home. (See *Burchard* v. *Garay* (1986) 42 Cal.3d 531, 539[229 Cal. Rptr. 800, 724 P.2d 486].)

[2] The trial court's failure to change title to the family home to tenancy-in-common is error since, upon the death of one party, that party's share should pass through his or her estate, not go to the former spouse as the surviving joint tenant.

[3] William cites no authority for his proposal to extend the principal of reimbursement for exclusive use of a community asset between separation and trial (*In re Marriage of Watts* (1985) 171 Cal.App.3d 366, 374 [217 Cal. Rptr. 301]) to orders after trial, nor was evidence presented establishing the rental value of the community residence. Whether pretrial or post-trial, the court, in fixing support, must consider the needs of the supported person. To the extent those needs are less because of lower housing costs, the support ordered, as here, should reflect this fact.

[4] The court did retain jurisdiction to modify the order deferring sale in the event of a change of circumstances. (See Civ. Code, § 4800.7, which has been enacted since the trial in this case.)

the trial court must exercise its discretion in setting the duration of the award in accordance with the evidence on that issue.

"The trial court's authority to award the family residence to the parties as tenants-in-common and award the custodial parent exclusive possession as additional child support was first approved in *In re Marriage of Boseman* (1973) 31 Cal.App.3d 372. *Boseman* was followed in *In re Marriage of Herrmann* (1978) 84 Cal.App.3d 361 [award of note reversed; house should be awarded to parties as tenants-in-common, with exclusive possession to custodial parent, when award to either party is economically unfeasible]. The third part of the trilogy, *In re Marriage of Duke* (1980) 101 Cal.App.3d 152 *requires* that the sale of the house be deferred and that a *Boseman/Herrmann* order be made under certain designated circumstances." (Adams & Sevitch, Cal. Family Law Practice (7th ed.) § E.56.0.1, parallel citations omitted, italics in original.) We have previously noted our disagreement with *Duke's* limitation on the trial court's discretion by stating "*Duke* has been described as holding that deferring the sale of the family home until the youngest child of the parties reaches the age of majority must always be ordered where adverse economic, emotional and social impacts on the minor result from an immediate loss of a long-established family home and are not outweighed by the economic detriment to the out-spouse by the delay in receiving his or her share of the proceeds in the equity of the family home. We believe the better rule is that of *In re Marriage of Herrmann, supra,* 84 Cal.App.3d 361 [148 Cal. Rptr. 550], and *In re Marriage of Boseman, supra,* 31 Cal.App.3d 372 [107 Cal. Rptr. 232], that the trial judge should weigh these factors, as well as others, and be vested with broad discretion in making a disposition of the family home. [¶] ... As a practical matter, it should be noted that the emotional attachment of a child to a home may be minimal if the child is very young and of questionable significance if the child is an older teenager. However, in the event the court exercises its discretion to order a deferral of sale of the family home, we do not agree that sale of the family home must always be deferred until the youngest child of the parties reaches the age of 18. Where such deferral would delay sale for many years the trial court has the discretion to determine an appropriate earlier time at which a sale might take place, such as when the child would naturally be changing schools to one outside of the immediate neighborhood. [¶] Additionally, we believe that the factor of economic deteriment to the noncustodial parent should be broadly construed in today's economic circumstances. Given the extremely high cost of housing in urban areas in California, only the very wealthy are in a position to purchase a new home without receiving their share of a sizeable equity in an existing home. Thus, deferral of the sale of the family home would not only interfere and perhaps preclude the out-spouse from obtaining suitable housing accommodations to be able to enjoy the frequent

and continuing contact with his or her children which is the public policy of California as set forth in [Civil Code] section 4600, subdivision (a), but may well preclude obtaining adequate housing for themselves and any later family they may acquire, and limit their ability to be able to get on with living their own life in their postdivorce world. If considerable appreciation has taken place, tax factors should also be considered in reaching the decision whether or not to defer a sale, even if they are not clearly immediate and specific as would be required for accomplishing an equal division of the property.... If deferral of the sale would deprive the out-spouse of a deferral of tax on the gain by precluding the tax-free 24-month roll-over of equity into a new residence under Internal Revenue Code section 1034, or of the one time exclusion of gain up to $125,000 under Internal Revenue Code section 121 and Revenue and Taxation Code section 17155, it is certainly equitable to consider these factors in determining the disposition of the family home. It could be argued that the loss of the tax benefits of Internal Revenue Code sections 1034 and 121, and their California counterparts, provide sufficient economic detriment to the out-spouse so as to require, as a matter of law, an immediate, rather than a deferred, sale of the family home." (*In re Marriage of Horowitz* (1984) 159 Cal.App.3d 368, 374, fn. 6 [205 Cal. Rptr. 874].)

The trial judge has broad discretion to defer the sale of the family home after weighing the factors outlined above. The problem in the instant case is that the record discloses no evidence was presented on these factors; thus the trial court could not have weighed them. For this reason we must reverse the trial court's determination to defer the sale of the family home and remand this issue for retrial. We express no opinion as to how the trial court should exercise its discretion on this issue because of the lack of evidence in the record.

For the guidance of the trial court upon retrial, in the event a determination is again made to defer the sale of the family home, we note that William's request for an order requiring Carol to maintain insurance on the home naming him as coinsured was not granted. "If such an order is made, the in-spouse should be given the right to sole use and possession of the property and would normally be given the responsibility to pay all mortgage payments, taxes, insurance and expenses of reasonable maintenance. If these costs would be less than the reasonable rental value of the property, it would appear equitable to offset any child or spousal support payments by one-half of the difference. It is appropriate for the court to reserve jurisdiction for the purposes of modification of the order in the event of any change of circumstances. As indicated above, there should be a provision in the order giving the in-spouse an opportunity to purchase the interest of the out-spouse at the end of the deferral period, or upon further

order of the court. At that time, the court should also retain jurisdiction to reimburse the in-spouse for capital improvements made by that spouse. Finally, such an order should require the in-spouse to maintain the property in a condition comparable to that at the time of trial and to maintain all appropriate insurance coverage with the out-spouse as a coinsured. A variant of this order is to require the parties to share the monthly payments in order to assure each receives one-half of the tax benefits flowing from them. Such an arrangement must be utilized with caution because it may become a source of continuing friction between the former spouses." (*In re Marriage of Horowitz, supra,* 159 Cal.App.3d at p. 373, fn. 5.) Although we stated in *Horowitz* that it would be equitable to provide an offset against support to the extent of one-half the difference between the reasonable rental value and the housing expense attributable to the family home, in retrospect, this will usually be unnecessary and may result in inequity. In fact, as here, there usually is insufficient income available to allow all members of the postdivorce family to enjoy the same standard of living enjoyed when living together prior to separation. In fixing the amount of child or spousal support the needs of the supported party must be considered; the lower the housing expense, the lower the needs of the supported party and therefore the lower the amount of support which will be ordered. (See fns. 1 & 3, *ante.*)

## II

### RESPONSIBILITY FOR DEBTS INCURRED FOR LIVING EXPENSES WHILE RECEIVING COURT-ORDERED TEMPORARY SUPPORT.

 The trial court found the community owed Carol's parents $1,723 for mortgage payments, real estate taxes and insurance paid on the community residence after separation while Carol was receiving court-ordered support payments. Carol testified she borrowed from her parents because the support checks were late and insufficient to meet her expenses.[5] At the time Carol was living in the community residence and had claimed $238 per month house payments in the income and expense declaration filed with her motions for temporary support.

Although reimbursement is the general rule where, after separation, separate funds are used to pay community obligations, " '[r]eimbursement should not be ordered if payment was made under circumstances in which it would have been unreasonable to expect reimbursement, for example, ... where the payment was made on account of a debt for the acquisition or

---

[5] No allegation of default or finding of wrongful conduct supports recourse to "recognized equitable considerations" or estoppel as Carol suggests.

preservation of an asset the paying spouse was using and the amount paid was not substantially in excess of the value of the use.' " (*In re Marriage of Epstein* (1979) 24 Cal.3d 76, 84-85 [154 Cal. Rptr. 413, 592 P.2d 1165], quoting *In re Marriage of Smith* (1978) 79 Cal.App.3d 725, 747 [145 Cal. Rptr. 205].)

Carol's claim that loans were required from her parents because William's support payments were late does not explain why the loans were not repaid when the support payments were received. Her claim that she borrowed from her parents because the amount the court ordered for temporary support was insufficient to meet what she felt she needed for living expenses was undoubtedly true. However, that does not cause the loans to become a community obligation. It is a basic mathematical fact that court orders for temporary support will usually be insufficient to allow the supported spouse to maintain the same standard of living enjoyed prior to separation; nor will the amount left for the supporting spouse be sufficient for that spouse to maintain that standard of living. After all, the same income which often barely allowed the parties to meet their expenses while living together, must now also cover additional expenses such as a second residence, another utility bill, etc., to say nothing of legal fees for the dissolution. In other words, when the same amount of income which barely met the expenses of one household must now meet the expenses of the same parties living in separate households, it usually will not stretch far enough to allow either of them to enjoy the same standard of living enjoyed prior to separation. If a spouse wishes to borrow money to continue to enjoy the pre-separation standard of living because he or she feels the court's order for temporary support does not provide sufficient funds to do so, such loans are that spouse's separate obligation, not the obligation of the community.

Under *Epstein* Carol has no claim for reimbursement for house payments she made between separation and trial while occupying the home and receiving court-ordered temporary support. (See also Civ. Code, § 5120.140, subd. (a)(2).) Carol's obligation to make the house payment would have been considered by the court in fixing the amount of support under the temporary order. It follows, contrary to the trial court's characterization, that the debt she incurred to make payments on the home she was occupying is her obligation, not the community's.

## III

### CHARGE FOR USING COMMUNITY FUNDS DURING SEPARATION.

The trial court found William agreed Carol could use the community cash on hand, $34,426.52, for living expenses after separation. There was no

finding of a gift of community funds. It further found (after disallowing certain items) Carol spent $29,434.97, leaving a balance of $5,051.55 plus interest.[6] William contends the community is entitled to reimbursement of the expended funds.

Carol testified that when they separated in October 1983, William volunteered to pay $125 a week toward her expenses and "whatever else I needed, I could take out of the savings." William testified he paid Carol "approximately $560 a month," but denied making any agreement about the money in community bank accounts under her control. Pursuant to Carol's motion filed June 28, 1984, the trial court ordered temporary child and spousal support of $1,000 a month beginning July 1984.

■ The community is entitled to reimbursement when one spouse uses community property to pay separate obligations after separation. (*In re Marriage of Epstein, supra,* 24 Cal.3d at p. 89.) However, in the converse situation (separate funds used to pay community obligations after separation) where the general rule is also reimbursement (see *ante,* Part II), the *Epstein* court held reimbursement should not be ordered "where the payment ... constituted in reality a discharge of the paying spouse's duty to support the other spouse or a dependent child of the parties." (*Id.,* at p. 85.) By analogy the trial court should have the discretion to allow a spouse requiring support between separation and the issuance of a pendente lite order to use a reasonable amount of community funds for that purpose without being charged for the funds used. Carol should be required to reimburse the community for community funds she used for her living expenses to the extent they, and the amount received in voluntary payments, exceeded a reasonable amount for child and spousal support.[7] Absent evidence to the contrary, the reasonable amount of child and spousal support for the period between separation and the first court order, would appear to be the amount ordered in the first order, $1,000. Thus unless Carol can show circumstances justifying an amount in excess of what the court later ordered for temporary support, she should reimburse the com-

---

[6] William misunderstands the court's statement that, "[t]he mortgage payments, house maintenance, and homeowners dues payments claimed by Respondent are disallowed since she received the benefit of living in the family residence during the period when these payments were made." This finding appears under the rubric "Debts" and seems to be an application of the *Epstein* rule discussed *ante,* denying Carol reimbursement for separate property payments on the community residence she lived in while receiving support. It does *not* mean the mortgage, maintenance and homeowners dues totalling $4,921 are disallowed as living expenses.

[7] To invoke the protection of Civil Code section 5131 against any liability for Carol's support prior to her motion for temporary support, William would have to prove he and Carol separated by an agreement without support provisions. (*In re Marriage of Epstein, supra,* 24 Cal.3d at p. 85.) But both parties testified William agreed to support payments; they disagree only as to the amount.

munity $29,434.97 less the difference between $1,000 a month and the amount she received from William prior to July 1, 1984. Alternatively, as part of the division of community property, she could be charged with the excess.

## IV

### TRUSTEE ACCOUNT FOR THE CHILD.

■ The trial court found a savings account to be a gift to the party's minor child, Robert, and ordered Carol to repay $3,700 taken therefrom. The account was in Carol's name in trust for Robert and contained about $1,000 from gifts to Robert and $9,000 from the couple's earnings during marriage. William challenges the characterization on the ground the account constituted a revocable trust, and he never gave written consent to a gift of community property to Robert.

Civil Code section 5125, subdivision (b) provides, "[a] spouse may not make a gift of community personal property ... without the written consent of the other spouse." In *In re Marriage of Stephenson* (1984) 162 Cal.App.3d 1057 [209 Cal. Rptr. 383], the court held that a provision of the Uniform Gifts to Minors Act making a transfer irrevocable and indefeasibly vesting custodial property in a minor[8] "does not preclude a spouse from voiding a gift of community property that is otherwise voidable." (*Id.* at p. 1071.) The record is devoid of evidence William ever consented to or ratified in writing a gift of community funds to Robert.

The *Stephenson* court also found "evidence demonstrating that [Wife] had knowledge and participated in the couple's program of opening up savings accounts for their children ... [¶] ... insufficient to support a finding of either estoppel or waiver." (*Id.* at p. 1072.) In this case there was conflicting testimony as to William's knowledge of or participation in the purported gift, and no finding of estoppel or waiver. "Consequently, absent written consent, written ratification, waiver or estoppel, the nondonor spouse is not precluded from voiding the gift." (*Id.* at p. 1071; fn. omitted.) Thus, the trial court erred in awarding the entire custodial bank account to Robert as a gift.[9] The amount of the account attributable to earnings of the parties before separation, and accruals thereon, is the community property of the parties.

---

[8] Civil Code section 1157, subdivision (a), now Probate Code section 3911, subdivision (c), the California Uniform Transfers to Minors Act.

[9] If, as William asserts in his trial brief, the account were a "Totten" trust, it would be inherently revocable. (*Estate of Wilson* (1986) 183 Cal.App.3d 67, 69, fn. 1 [227 Cal. Rptr. 794].)

## V

### SALE OF THE MOBILEHOME.

The trial court awarded William the couple's mobilehome. The mobile-home, located at Lake Berryessa, was valued at $30,000. The court also ordered William to pay Carol $16,944.62 to equalize the division of the community property and ordered the mobilehome sold if necessary to meet this obligation to Carol, with the balance of the proceeds of sale to be divided between the parties. William contends this order resulted in an unequal and inequitable division of the community property.

■ Under Civil Code section 4800, the trial court has broad discretion as to the means of effecting a substantially equal division of property. (*In re Marriage of Lotz* (1981) 120 Cal.App.3d 379, 385 [174 Cal. Rptr. 618].) "[A] trial court may, in the exercise of its discretion, order that a community property asset be sold in order to effectuate an equal division of the community property." (*In re Marriage of Rives* (1982) 130 Cal.App.3d 138, 155 [181 Cal. Rptr. 572].)

Since we have reversed the disposition of several items of community property, on retrial the trial court will probably not have to order the mobilehome sold to accomplish an equal division of community assets. For this reason, it is unnecessary to discuss this issue in detail. We note that "the issue is not whether an alternate division was preferable, but whether the court below abused its discretion . . ." (*In re Marriage of Judd* (1977) 68 Cal.App.3d 515, 520 [137 Cal. Rptr. 318].) We believe the forced sale of the mobilehome was within the trial court's discretion. This is true even though it appears unfair to defer William's receipt of the proceeds from the family home for 10 years, yet require him to sell the mobilehome which he uses most weekends for visitation with his son in order to pay Carol the amount necessary to accomplish an equal division. A more equitable alternative would have been to provide Carol with a greater proportionate interest in the family home or require William to execute a short-term promissory note in her favor for the amount necessary to provide an equal division of community property. (See *In re Marriage of Horowitz, supra,* 159 Cal.App.3d at pp. 372-373.)

## VI

The trial court ordered William to pay Carol $850 per month for spousal support "until she marries, dies or until further order of the Court." William claims the court abused its discretion by failing to fix a timetable for Carol to become self-supporting or, at least, for her to become employed on

a full-time basis. Carol testified she occasionally sold Tupperware and had worked as a secretary. She was unemployed and recovering from injuries sustained in two automobile accidents at the time of trial. She estimated she could finish the course of study on which she was embarked at Skyline College in three years and obtain a degree or credential in an additional three or four years.

■ "A trial court should not terminate jurisdiction to extend a future support order after a lengthy marriage, unless the record clearly indicates that the supported spouse will be able to adequately meet his or her financial needs at the time selected for termination of jurisdiction." (*In re Marriage of Morrison* (1978) 20 Cal.3d 437, 453 [143 Cal. Rptr. 139, 573 P2d 41].) Thus, "orders providing for absolute termination of spousal support on a specified date are disfavored...." (*In re Marriage of Vomacka* (1984) 36 Cal.3d 459, 467 [204 Cal. Rptr. 568, 683 P.2d 248].)

On the other hand, "a spousal support order *may, in a proper case,* be fashioned so as to encourage ... supportive self-reliance, and to discourage delay in preparation for or in seeking, or refusal of, available employment." (*In re Marriage of Richmond* (1980) 105 Cal.App.3d 352, 356 [164 Cal. Rptr. 381], italics added.) Appellate courts have thus upheld orders providing a tentative termination date on which the burden shifts to the payee spouse to show cause to extend the order. (*Ibid.*; *In re Marriage of Winick* (1979) 89 Cal.App.3d 25 [152 Cal. Rptr. 635].) The trial court would not have abused its discretion in setting such a tentative termination date in this case based on Carol's educational progress, and we believe it would have been better practice to do so. (See *Prietsch* v. *Calhoun* (1987) 190 Cal.App.3d 645 [235 Cal. Rptr. 587], for a discussion of the alternative orders for spousal support available to the trial judge.) However, the trial court's refusal to grant William's request does not constitute an abuse of discretion.

Although we uphold the spousal support order as being within the broad discretion the trial court possesses in fixing the duration of spousal support, we recognize that the circumstances of the parties may have changed in the two years since trial. Additionally, retrial of the issue of the family home may result in a different disposition which would affect support. The different disposition of other community property assets mandated by our decision may also constitute a change in circumstances. For these reasons, this decision should not preclude the court, upon remand, from considering a motion by either party for modification of the amount or duration of spousal support.

## DISPOSITION

We reverse the judgment as to the disposition of the family home, the community funds expended by Carol during separation and the trustee account in the name of the party's son and remand these issues for retrial in accordance with the views expressed in this opinion. Because there will be, at least in part, a different disposition of community property, the disposition of the mobilehome shall also be retried. In all other respects, the judgment is affirmed. The parties shall each bear their own costs on appeal.

Low, P. J., concurred.

**HANING, J.,** Concurring and Dissenting.—Like the majority I would also affirm the award of support and disposition of the mobilehome because I believe the trial court was acting well within its discretion. I also agree that on the basis of the record before us, Civil Code section 5125, subdivision (b) requires that we reverse that portion of the judgment which declares the trust account to be the child's property; however, I would remand for further findings. I concur in the reversal of that portion of the judgment which holds that the debt to the wife's parents is a community obligation. As to the remainder of the majority opinion which reverses the judgment, I respectfully dissent.

Numerous decisions of the Courts of Appeal have upheld the trial court's discretion, under appropriate circumstances, to defer the sale of the family residence. (*In re Marriage of Duke* (1980) 101 Cal.App.3d 152 [161 Cal. Rptr. 444]; *In re Marriage of Herrmann* (1978) 84 Cal.App.3d 361 [148 Cal. Rptr. 550]; *In re Marriage of Boseman* (1973) 31 Cal.App.3d 372 [107 Cal. Rptr. 232].) I conclude that the present circumstances are appropriate for such an order.

The parties were married for nearly 15 years. The husband is a journeyman plumber earning in excess of $50,000 annually. The wife has not been employed outside the home and has no demonstrable earning capacity save for nominal income obtained through sales of Tupperware products. She has only a high school education, but has enrolled in college and is pursuing a course of study leading to a baccalaureate degree.

The minor son of the parties is suffering from psychiatric problems. He is unable to handle ordinary classroom work at school without additional help, and is attending a special educational program. The wife's assumption of her formal education is laudable, and should be encouraged. Achievement of her degree will promote her ability to become self-supporting and relieve the husband of much, if not all of his spousal support obligation. The

wife's education will also enure to the child's benefit. If remaining in the family residence temporarily will accelerate or advance the wife's educational program, the trial court is acting well within its discretion to permit her to remain.

I think the child's situation speaks for itself. His circumstances and the need for continued treatment are not disputed, and the current low house payments greatly facilitate the continuation of his medical and educational needs. The trial court found that the mental condition of the child and the financial condition of the parties require that the wife and child be permitted to reside in the family residence temporarily. It reserved jurisdiction to modify their occupancy of the residence upon a sufficient change of circumstances. If the wife maintains her present educational progress she will complete school long before the child reaches 18. By that time, if not before, the child's circumstances may also have changed, and the trial court can reassess the situation.

The *possible* adverse tax consequences of the deferred sale of the residence were *not* presented to the trial court by the husband. Although he urges us to do so, we cannot speculate on appeal that such consequences exist. (See, e.g., 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 250.) The trial court found that the child's mental condition and the financial circumstances of the parties required that the wife and child remain in the family residence until the circumstances changed. I think its finding is supported by substantial evidence, and should be affirmed.

The evidence regarding the wife's use of cash on hand for living expenses after separation was disputed. The wife testified that the husband agreed she should use the community funds to supplement the support payments which, standing alone, were insufficient to support her and the child. The trial court found that the husband so agreed. That finding is binding on us. (*Crawford v. Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 Cal. Rptr. 183]; see also *In re Marriage of Epstein* (1979) 24 Cal.3d 76, 84 [154 Cal. Rptr. 413, 592 P.2d 1165].) Credibility of the witnesses and the weight of the evidence are matters for the finder of fact (*Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 925-926 [101 Cal. Rptr. 568, 496 P.2d 480]), and the testimony of a single witness is sufficient to support a finding on such a factual issue. (*Chodos* v. *Insurance Co. of North America* (1981) 126 Cal.App.3d 86, 97 [178 Cal. Rptr. 831].)

With regard to the child's trust account, if we follow the majority's reasoning to its ultimate conclusion, the trial court must also order the child's bicycle, teddy bear and other toys and personal possessions sold or distributed between husband and wife. I am not sure this is what the Legis-

lature had in mind when it enacted Civil Code section 5125, subdivision (b), but neither do I find it necessary to address that issue in light of the record before us. It simply is inadequate to enlighten us sufficiently to rule. We know that some of the money in the trust account consisted of birthday and Christmas gifts. We do not know who made the various gifts, nor the manner in which they were made. We also know that the parties met with a financial advisor for purposes of estate planning, and that pursuant to his suggestion an account was opened to provide for the future education of their child. I would remand to the trial court with instructions to take further evidence and make a new finding on the status of the trust account.

Finally, if the matter has to be reversed for any reason, I think the trial court should be permitted to re-exercise its entire discretion in light of any changes which are required. It disposed of property and awarded support in light of its entire judgment as it then existed. If it must adjust any allocations, it might also exercise its discretion differently in other areas. The discretion belongs to the trial court, and not to us. When appellate courts reverse trial courts in divorce cases, the trial courts should be able to consider the entire matter anew with regard to those areas in which they have discretion.