Filed 9/9/15  In re Marriage of LaMoure CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re the Marriage of NATHAN and ROBIN LAMOURE. | |
| NATHAN D. LAMOURE,<br><br>        Appellant,<br><br>v.<br><br>ROBIN LAMOURE,<br><br>        Respondent;<br><br>MESA WEST, INC.,<br><br>        Respondent;<br><br>SAN BERNARDINO COUNTY DEPARTMENT OF CHILD SUPPORT SERVICES,<br><br>        Respondent. | E058817<br><br>(Super.Ct.No. SBFSS71194)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  John M. Pacheco,

Judge.  Affirmed.

1

Nathan D. La Moure, in pro. per., for Appellant.

Vogt, Resnick & Sherak and Jeany A. Duff for Respondent Mesa West, Inc.

No appearance for Respondent Robin LaMoure.

No appearance for Respondent San Bernardino County Department of Child Support Services.

I

INTRODUCTION

This is Nathan La Moure's third appeal in this marital dissolution action. Nathan appeals the family court's order entered on January 9, 2013, ordering the sale of Nathan's residence located at 30 Sea Island Drive, in Newport Beach (the Sea Island property), in satisfaction of a civil judgment entered against Nathan.

Nathan contends the lower court did not have jurisdiction to order the sale of the Sea Island property. The family court found the property was community property owned by Nathan and his ex-wife, Robin La Moure. Nathan argues the order for sale of the property by judgment creditor and respondent, Mesa West, Inc. (Mesa West), was premature because there was no final judgment dividing the marital debts and assets. In addition, the January 9, 2013 family court order was based on a judgment entered by a separate court, the Orange County Superior Court, in a civil action.

Nathan also contends the lower court failed to follow California homestead statutes, Code of Civil Procedure sections 704.710-704.850, and 704.910-704.990, when ordering the sale of the Sea Island property, which is subject to a homestead exemption. Nathan further argues Robin had no community property interest in the Sea Island

2

property, and the family court erred in finding that Robin is entitled to half of the $175,000 homestead exemption. Nathan also argues the family court erred in ordering the sale of the property without finding there was surplus property equity, in excess of liens, to justify the sale order. Lastly, Nathan asserts the family court failed to weigh the equities against a prejudgment sale of the Sea Island property, which Nathan had declared his homestead residence.

We conclude the January 9, 2013 interlocutory order is not an appealable judgment and there is insufficient justification for treating Nathan's appeal as a petition for an extraordinary writ. Furthermore, even considering Nathan's contentions on the merits, we reject Nathan's challenges to the January 9, 2013 court order, and affirm the order.

II

FACTUAL AND PROCEDURAL BACKGROUND

Nathan and Robin married in 1993. The couple had two sons, born in 1995 and 1998. In August 2002, Nathan's law firm, Nathan D. La Moure, a Professional Corporation, purchased the Sea Island property. Nathan and Robin separated in February 2003. A month later, in March 2003, Nathan filed for divorce.

*Mesa West* **Litigation**

Nathan provided Mesa West with legal services, beginning in 1976. Mesa West dissolved in 2003 or 2004. In April 2005, Mesa West filed suit against Nathan and his law firm in the Orange County Superior Court (*Mesa West, Inc. v. Nathan D. La Moure, et al.*, (Super. Ct. Orange County, 2006, No. 05CC05262) (*Mesa West*)). In the lawsuit,

3

Mesa West sought return of attorneys fees Nathan overbilled for legal services. In March 2007, Nathan's law firm assigned to Nathan all of its beneficial interest in the Sea Island property. In April 2007, the court awarded Mesa West a judgment against Nathan in the amount of $909,214.36, for disgorgement of attorney fees. Nathan appealed the judgment and in June 2007, filed an undertaking to stay enforcement of judgment pending appeal. Nathan and his law firm, acting as sureties, pledged real property including the Sea Island property.

In July 2007, Mesa West recorded an abstract of judgment with Orange County. While Nathan's *Mesa West* appeal was pending, in December 2008, ownership of the Sea Island property was transferred from Nathan's law firm to Nathan as an individual. After Nathan lost his appeal in *Mesa West* and the Court of Appeal issued a remittitur in April 2009, Mesa West commenced judgment enforcement proceedings. In November 2009, Nathan executed and recorded a declaration of homestead on the Sea Island property.

In January 2010, Mesa West recorded a certified judgment against the Sea Island property. Mesa West obtained a writ of execution seeking to levy upon the Sea Island property and sought to apply the property sales proceeds to satisfy the judgment against Nathan and his law firm. In October 2010, the Orange County Superior Court in *Mesa West* issued an order to show cause (OSC) re sale of the Sea Island property. Mesa West asserted in its application for issuance of an order for sale of the Sea Island property that the property did not qualify for a homestead exemption because the property was not the primary residence of either Nathan or Robin when Mesa West's lien was recorded in July 2007; Nathan stated in his declaration in the *Mesa West* action that his residence was on

4

Karenken Pines Drive, in Lake Arrowhead; title to the property did not transfer to Nathan from his law firm until December 2008; and Nathan did not sign a homestead declaration for the Sea Island property until November 2009.

The Orange County Superior Court continued the OSC hearing regarding the Sea Island property, in deference to the family court's determination of the characterization and assignment of the *Mesa West* judgment debt, and allocation of the Sea Island property sales proceeds.

**Family Court Marital Dissolution Proceedings**

On November 2, 2010, Mesa West filed a motion and declaration of joinder in the instant family court action. Mesa West's supporting declaration stated that it sought to be joined as a claimant in the family court action on the grounds Mesa West held a judgment lien in the amount of $909,214.36; the *Mesa West* judgment was recorded in July 2007; in March 2010, the family court declared the Sea Island property community property; and in September 2010, notice of levy against the Sea Island property was recorded. Mesa West further stated it intended to request an order for sale of the property. In September 2004, Robin recorded a lis pendens on the property, which clouded title and therefore needed to be expunged so that Mesa West could proceed with its levy.

In May 2011, the family court conducted a one-day trial of the issues of characterization and assignment of the marital debt and allocation of the Sea Island property. On September 13, 2011, the court issued a proposed statement of decision. The valuation date for the marital assets was deemed to be the date of separation, February 18, 2003. Nathan and Robin were each awarded one-half of the community

5

property. The court concluded the value of the Sea Island property on the date of separation was $475,000. The court noted the property had previously been determined by the court to be community property. As to the value of the Sea Island property, the court noted that Nathan had stated in various documents filed in the case that the value of the property was around $400,000. Nathan had also produced a document showing the property was listed at $475,000. The court ordered Nathan to pay Robin's attorney fees and ordered him to pay $50,000 in sanctions under Family Code section 271 based on "(a) his uncooperative conduct; (b) his failure to abide by court orders designed to address the uncooperative conduct; (c) his intentional secretion of community assets; (d) his refusal to be truthful about the parties' community assets; (e) and his overall 'intransigence.'"

Mesa West filed an objection to the September 13, 2011 proposed statement of decision, as did Nathan and Robin. Mesa West objected on the ground the proposed statement of decision did not address trial issues regarding Mesa West's and the Department of Child Support Services's (DCSS) interests in the Sea Island property. Although the decision determined that the Sea Island property's value was $475,000 and Robin was entitled to her 50 percent interest in the property, the court did not make findings on Mesa West and DCSS's interests and allocation of their interests in the property. During the trial, Mesa West presented evidence demonstrating the Mesa West debt was community debt incurred during the marriage; the debt was reduced to a judgment on April 13, 2007; and Mesa West recorded an abstract of judgment on July 18, 2007, creating a lien against the Sea Island property. Mesa West requested the family

6

court to modify its proposed statement of decision to address whether the Mesa West debt was community property debt and how the debt should be satisfied from the Sea Island property.

On March 27, 2012, the court issued a modified statement of decision (statement of decision) incorporating the proposed statement of decision and adding the following findings and rulings regarding Mesa West: "Mesa West was added as a party by way of a Joinder Motion pertaining to Judgment obtained against [Nathan and his law firm] in Orange County Superior case number 05CC0562. The money sought in the judgment, by Mesa West, is a debt of the community. The issue is how to distribute and who has priority of the proceeds of 30 Sea Island between DCSS, Mesa West and the parties. All parties agree that DCSS has a priority lien. If, after the calculations are made, DCSS' lien is extinguished then next in priority will be Mesa West. The court will order the sale of 30 Sea Island to pay satisfy the community debt. The court further finds that it has and retains jurisdiction as to the sale of any and all properties as well as the proceeds thereof."

Nathan filed an objection to the statement of decision. On July 31, 2012, the family court amended the statement of decision (amended statement of decision). The court corrected the address of the Sea Island property in the section of the statement of decision referring to the assignment of properties. The court ordered the Sea Island property assigned to Robin and the unpaid taxes on the property assigned to Nathan, with the family court retaining jurisdiction over the orders. The amended statement of decision further ordered the Orange County Sheriff to perform the sale of the Sea Island

7

property "forthwith." In addition, the court ordered that "[t]he Department of Child Support Services lien to remain on said property and to be discharged at the time of sale if no monies are owed." Nathan filed an objection and supplemental objection to the amended statement of decision.

On January 9, 2013, the family court entered an order entitled, "Order for Sale of Real Property – 30 Sea Island, Newport Beach, CA 92660," in which the court found the Sea Island property was community property; the value of the property at the time of Nathan and Robin's separation in February 2003, was $475,000; the *Mesa West* judgment entered in April 2007 and recorded in January 2010 against the Sea Island property, was community debt; and the property should be sold. In addition to ordering the property sold, the court ordered that the property sales proceeds were to be applied in the following order of priority: (1) payment of $175,000 in equal shares to Nathan and Robin under Code of Civil Procedure section 704.730 (homestead exemption); (2) reimbursement of costs to the levying officer; (3) payment of any remaining child support to DCSS, and (4) payment of the remaining judgment balance to Mesa West, as judgment creditor.

On January 24, 2013, the family court ruled that all prior statements of decisions and amended statements of decisions were incorporated and would stand as a final order. Mesa West filed a notice of entry of the January 9, 2013 order, which Nathan appeals.

III

REQUEST FOR JUDICIAL NOTICE

Nathan requests judicial notice of 13 documents filed in *Mesa West* (the

8

documents).  The documents relate to Mesa West's efforts in *Mesa West* to enforce its judgment against Nathan, as judgment debtor.  The documents were not submitted for consideration by the family court in the instant case.  Nathan requests judicial notice of the documents under Evidence Code sections 459 and 452, subdivision (d).  Evidence Code Section 459, subdivision (a), provides in relevant part that "[t]he reviewing court *may* take judicial notice of any matter specified in Section 452.  [Emphasis added.]" Under section 452, subdivision (d), the family court in its discretion may take judicial notice of state and federal court records.

Nathan argues the documents are relevant to the instant appeal because they relate to *Mesa West* proceedings mentioned in the instant appeal.  Nathan asserts that the family court in the instant action acted on information regarding *Mesa West* provided by counsel.  Nathan maintains, "Judicial notice is required to fully analyze and review the court's ruling on the details overlooked by the trial court."  The documents Nathan requests this court to judicially notice are records and documents filed with the Orange County trial court in *Mesa West*.

Mesa West objects to judicial notice of the documents on the grounds Nathan failed to timely designate the documents on appeal and the documents are not relevant to the instant appeal.  We agree.  Although the *Mesa West* proceedings were pending in the Orange County Superior Court, not the San Bernardino Superior Court where the instant family court matter was heard, the Orange County Superior Court delayed enforcing its judgment in the *Mesa West* civil action until the family court ruled on the character and

division of the Sea Island property, in deference to the family court's special jurisdiction to characterize and divide community property.

"After a family law court acquires jurisdiction to divide community property in a dissolution action, no other department of a superior court may make an order adversely affecting that division. (*In re Marriage of Schenck* (1991) 228 Cal.App.3d 1474, 1483–1484 [civil law and motion department had no authority to order the sale of the family home based on husband's accrued support arrearages when the family law court still had jurisdiction to divide the community interest in that home]; Hogoboom & King, Cal. Practice Guide: Family Law, *supra,* ¶ 8:237.2 ['Pending the ultimate valuation and division, no other department of the superior court may issue orders that would adversely affect the family law court's ability to exercise its reserved jurisdiction.'].) Obviously, the actual division of community property is affected by the characterization of specific assets, so the issue of characterization also reposes in the family law court. (See [Hogoboom & King, *supra,*] ¶ 8:199.1 [Family Law Act 'subject matter jurisdiction has always included authority to resolve all *characterization* disputes . . . .'].)" (*Askew v. Askew* (1994) 22 Cal.App.4th 942, 961-962 (*Askew*).)

Because the court in *Mesa West* deferred to the family court in the instant case determination of the character and division of the marital assets, the court in *Mesa West* did not determine the issues which are subject to Nathan's appeal here. The *Mesa West* documents are therefore not relevant or helpful in the instant marital dissolution matter. The documents are not necessary for this court to decide the issues raised in the instant appeal. Furthermore, it is inappropriate for this court to consider documents which were

10

not before the family court when it decided the matter on appeal. (*In re Zeth S.* (2003) 31 Cal.4th 396, 405, 413-414; *In re Robert A.* (2007) 147 Cal.App.4th 982, 990.) "This is so in part because an appellate court reviews the correctness of a record that was before the trial court at the time it made its ruling." (*Robert A.,* at p. 990, citing *Zeth S.,* at p. 405.) Because the documents Nathan requests judicially noticed were not before the family court at the time of the proceedings leading to the January 9, 2013 order, it is inappropriate to augment the record by judicially noticing them. (*Robert A.,* at p. 990.) Nathan's request for judicial notice of the 13 *Mesa West* documents is denied.

IV

NONAPPEALABLE ORDER

Nathan is appealing the order entered on January 9, 2013, in which the family court entered an order determining that the Sea Island property is community property; the value of the property at the time of separation was $475,000; and the *Mesa West* judgment was community debt. The family court also ordered the property sold and determined the priority of liens and encumbrances against the property. Mesa West argues Nathan's appeal should be dismissed because the January 9, 2013 order is not appealable. We agree.

*A. Appealability*

Nathan contends the order is appealable as a postjudgment order under Code of Civil Procedure section 904.1, subdivision (a)(2), or, alternatively, as an interlocutory judgment in an action for partition under Code of Civil Procedure section 904.1, subdivision (a)(9). Code of Civil Procedure section 904.1 provides in relevant part:

11

". . . An appeal, other than in a limited civil case, may be taken from any of the following: [¶] . . . [¶]

"(2) From an order made after a judgment made appealable by paragraph (1). [¶] . . . [¶]

"(9) From an interlocutory judgment in an action for partition determining the rights and interests of the respective parties and directing partition to be made."

An appellate court lacks jurisdiction to entertain an appeal from a nonappealable judgment or order. (*Doe v. United States Swimming, Inc.* (2011) 200 Cal.App.4th 1424, 1432.) "Consequently, it is the duty of the court to dismiss an appeal from an order that is not appealable." (*Ibid.*) Under Code of Civil Procedure section 904.1, subdivision (a)(1), an appeal may be taken from a judgment other than an interlocutory judgment. An interlocutory judgment occurs when further judicial action is essential to a final determination of rights of parties. (*Bessinger v. Grotz* (1942) 52 Cal.App.2d 379, 381.)

Under the "final judgment rule," an appeal lies only from a final judgment, one that effectively terminates the litigation. (*Olson v. Cory* (1983) 35 Cal.3d 390, 399; *Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 697.) This fundamental principle of appellate practice is founded on the theory that piecemeal disposition and multiple appeals in a single action are oppressive and costly. Therefore, a review of intermediate rulings should await final disposition of the case. (*Degnan v. Morrow* (1969) 2 Cal.App.3d 358, 362.) "The term 'final judgment' [however] is not limited to those decrees or decisions which finally determine all the issues presented by the pleadings. The term is equally applicable to a decree, order or decision which finally

12

determines a collateral matter distinct or severable from the general subject of the litigation." (*Carradine v. Carradine* (1946) 75 Cal.App.2d 775, 777.)

The one final judgment rule does not always apply in family law cases, because of bifurcation of distinct issues for separate trials. "'All issues incident to marital termination need not be tried in a single family law proceeding. The court may, on proper motion or at the request of the pretrial judge, order the trial *bifurcated,* allowing early disposition of the dissolution issue and subsequent litigation of the property, support and custody issues (or any other combination of issues and trials). [Citations.]' [Citations.]" (*In re Marriage of Wolfe* (1985) 173 Cal.App.3d 889, 894.) Family Code section 2337 provides, "(a) In a proceeding for dissolution of marriage, the court, upon noticed motion, may sever and grant an early and separate trial on the issue of the dissolution of the status of the marriage apart from other issues. [¶] . . . [¶] (f) A judgment granting a dissolution of the status of the marriage shall expressly reserve jurisdiction for later determination of all other pending issues." (Fam. Code, § 2337, subds. (a) and (f).) On noticed motion of a party, the stipulation of the parties, or its own motion, the court may bifurcate one or more issues to be tried separately before other issues are tried. (Cal. Rules of Court, rule 5.390(a).)[1]

In the instant case, the January 9, 2013 order is not appealable under Code of Civil Procedure section 904.1, subdivision (a)(2), as a postjudgment order because there was no judgment entered in the instant marital dissolution case before the family court entered

---

[1] Undesignated rule references are to the California Rules of Court.

13

the January 9, 2013 order. Although there was a final judgment in the *Mesa West* civil action, the instant appeal is not appealing the judgment or an order in *Mesa West*.

The January 9, 2013 order is also not appealable as an interlocutory order under Code of Civil Procedure section 904.1, subdivision (a)(9). The January 9, 2013 order was not an interlocutory judgment and the action is not an action for partition. Furthermore, there was no bifurcation order severing the issues decided by the January 9, 2013 order from other issues or from dissolution of marital status, in accordance with Family Code section 2337. "A judgment granting a dissolution of the status of the marriage shall expressly reserve jurisdiction for later determination of all other pending issues." (Fam. Code, § 2337, subd. (f).) At the time of the trial on the issues that are the subject of this appeal, there had not yet been an order granting dissolution of marital status. There also was no court-ordered bifurcation of the issues adjudicated in the January 9, 2013 order. (Cal. Rules of Court, rule 5.390(a); see rule 5.175(a), repealed eff. Jan. 1, 2013.)

In *In re Marriage of Lafkas* (2007) 153 Cal.App.4th 1429, 1435 (*Lafkas*) the court dismissed the former husband's appeal for lack of jurisdiction. Following termination of the parties' marital status in *Lafkas*, the family court held a bifurcated trial involving the division of disputed assets. The court found that the former husband's interest in his partnership was a community asset. The former husband appealed the order. The *Lafkas* court held that it lacked jurisdiction to consider the former husband's appeal in the absence of a certificate of probable cause and order allowing the appeal of the bifurcated issue. (*Id.* at pp. 1431-1432.) The *Lafkas* court further declined to exercise its discretion

14

to treat the former husband's improper appeal as a petition for extraordinary writ of mandate, and therefore dismissed the appeal. (*Id.* at pp. 1434-1435.)

The *Lafkas* court explained that, with the exception of orders terminating marital status as a separate issue and other orders separately appealable, an order on a bifurcated issue is not separately appealable unless the family court certifies (1) in an order that there is probable cause for immediate appellate review of the issue or (2) in response to a party's motion made 10 days after mailing of the decision. (Rule 5.392, formerly rule 5.180, renumbered as rule 5.392, eff. Jan. 1, 2013; Fam. Code, § 2025; *Lafkas, supra,* 153 Cal.App.4th at p. 1433; see *In re Marriage of Ellis* (2002) 101 Cal.App.4th 400, 403-404 (*Ellis*).) "If the certificate is granted, a party may . . . file in the Court of Appeal a motion to appeal the decision on the bifurcated issue." (Rule 5.392(d).) "Failure to seek or obtain appellate review of the decision on the bifurcated issue does not preclude review of the decision upon appeal of the final judgment. (Rule 5.180(h) [now rule 5.392(h)].)" (*Lafkas,* at p. 1433; see *Ellis,* at p. 404.)

Here, the *Lafkas* rationale for dismissing the instant appeal is even more compelling because there was no previous order terminating marital status and no order bifurcating issues in the instant case. As in *Lafkas*, a certificate of probable cause was required to invoke this court's jurisdiction. Even if there was a bifurcation order, Nathan did not follow the procedure in Family Code section 2025 allowing an interlocutory appeal on a bifurcated issue. No certificate of probable cause was obtained from the family court and the family court has not made a finding that immediate appellate review is desirable. This court therefore does not have jurisdiction to hear Nathan's appeal.

15

(*Lafkas, supra,* 153 Cal.App.4th at pp. 1433-1434.) "[A]ppellate jurisdiction is wholly statutory, and husband has not complied with the rules necessary to invoke appellate jurisdiction over an interlocutory order." (*Lafkas,* at p. 1434.)

## B.  Extraordinary Writ

Nathan urges this court to treat his appeal as an extraordinary writ in the event this court concludes the January 9, 2013 order is nonappealable and therefore the court lacks jurisdiction to entertain Nathan's appeal.  In *Lafkas*, the court rejected the former husband's similar request to treat his appeal as an extraordinary writ.  The *Lafkas* court concluded that the former husband had not shown exigent reasons for not waiting until final judgment to review the interlocutory order characterizing the husband's interest in his partnership enterprise as community property.  (*Lafkas, supra,* 153 Cal.App.4th at pp. 1434-1345.)  The *Lafkas* court noted that the partnership asset was not the only asset that needed to be characterized, valued, and divided, and also left undecided valuation and division of the partnership asset.  (*Id.* at p. 1345.)

Here, the family court provided a detailed, comprehensive statement of decision addressing the division and distribution of the marital assets, as well as ruling on other issues, including child custody, the date of separation, sanctions, and attorney fees. However, some issues remained undecided and marital status was not terminated. Nathan argues the January 9, 2013 order to sell the Sea Island property was premature because the order was not a final judgment of dissolution or final judgment dividing the marital assets and debts.  If this is the case, then it would also be premature for this court to review the January 9, 2013 order at this stage of the family court proceedings.

16

In *Ellis, supra,* 101 Cal.App.4th 400, the court in postdissolution of marriage proceedings, exercised its discretion in treating the former husband's appeal as an extraordinary writ for the purpose of reviewing the family court's order finding that the former husband's health insurance subsidy benefits were divisible community property. The *Ellis* court held the order was not appealable because it was interlocutory. (*Id.* at p. 403.) Nevertheless, the *Ellis* court treated the appeal as a petition for an extraordinary writ because both parties agreed in the trial court it was prudent and economical to bifurcate the property characterization issue from the issue of valuation; if the medical subsidy was not divisible, an expensive trial to determine its value would be unnecessary; the merits had been fully briefed; the former wife raised no objection to the appeal in her respondent's brief and thus impliedly agreed to the appellate court ruling on the merits; and, in response to the *Ellis* court requesting supplemental briefing on the appealability of the order, both parties requested the appeal be treated as a writ. (*Id.* at p. 404.)

The instant case is distinguishable from *Ellis*. The January 9, 2013 order does not involve postdissolution of marriage proceedings, and the parties did not agree in the family court or on appeal to bifurcate the issues concerning the Sea Island property and treat the appeal as an extraordinary writ. Robin objects to this court reviewing the matter. Nathan also has not established that such bifurcation and treatment of the appeal as an extraordinary writ would avoid an expensive trial or have bearing on any future proceedings in the action. The record demonstrates there is little, if any, possibility of Nathan avoiding the sale of the Sea Island property. Rather, the sale and division of the proceeds is inevitable. The court in *Mesa West* has already entered judgment against

17

Nathan and ordered the sale of the Sea Island property in satisfaction of the *Mesa West* judgment. In deference to the family court proceedings, the *Mesa West* court postponed the sale until the family court made its findings and entered orders on the characterization, valuation, and division of the Sea Island property. Now that that has been done and the family court has ordered the property sold, there is no reason to delay further sale of the property.

We see no reason to treat Nathan's appeal as an extraordinary writ, other than because the issues have been fully briefed and are before this court. This is not persuasive justification for treating this matter as an extraordinary writ. Nevertheless we will consider the merits of Nathan's appeal so as to preclude Nathan from raising the same objections in a future appeal of the final judgment in this case.

V

ORDER TO SELL THE PROPERTY

Nathan argues that the family court did not have jurisdiction to enforce the *Mesa West* judgment and order the Sea Island property sold. Nathan asserts the family court acted in excess of its jurisdiction when ordering a levy on the Sea Island property, which the court found to be community property. He further contends the Sea Island property was his separate property, and the family court could not order it sold, particularly before entry of a final judgment.

Under Family Code section 2010, "[i]n a proceeding for dissolution of marriage . . ., the court has jurisdiction to inquire into and render any judgment and make orders that are appropriate concerning the following: [¶] . . . [¶] (e) The settlement of the

18

property rights of the parties." The actual division of community property is affected by the characterization of specific assets, so the issue of characterization reposes in the family court. (*Askew, supra,* 22 Cal.App.4th at p. 962.) The family court's subject matter jurisdiction includes the authority to divide, characterize, and place a value on property. (§§ 2550-2552; *Askew,* at p. 962.) The family court therefore has the power and authority to order a sale of the community property when, in the exercise of sound judicial discretion, the court concludes it should do so in order to accomplish an equal division of the community property. (*In re Marriage of Davis* (1977) 68 Cal.App.3d 294, 306, 308-309.)

In the instant case the family court appropriately found that the Sea Island property was community property and that the $909,214.36 *Mesa West* judgment was community debt. The family court also had the authority and appropriately exercised its discretion in dividing equally between Nathan and Robin the $175,000 homestead on the Sea Island property. Doing so was a reasonable exercise of the family court's discretion. The family had jurisdiction to make its findings regarding the Sea Island property, and there was substantial evidence supporting the court's findings. There was evidence the *Mesa West* debt was incurred during the marriage and the Sea Island property was acquired and paid for with community property assets, including earnings from Nathan's law practice. Nathan has not demonstrated that the family court abused its discretion in ordering the sale of the Sea Island property to satisfy the *Mesa West* judgment debt or in ordering the $175,000 homestead exemption divided equally between Nathan and Robin.

19

Nathan argues the family court erred in not complying with the requirements of Code of Civil Procedure section 704.740 when ordering the Sea Island property sold. Code of Civil Procedure section 704.740 provides in relevant part that "the interest of a natural person in a dwelling may not be sold under this division to enforce a money judgment except pursuant to a court order for sale obtained under this article and the dwelling exemption shall be determined under this article." Specifically, Nathan argues the family court failed to comply with Code of Civil Procedure section 704.800, subdivision (a), which requires a homestead cannot be sold pursuant to court order unless the sale amount exceeds the amount of the homestead exemption, plus amounts necessary to satisfy all liens and encumbrances on the property.

The family court order to sell the Sea Island property in furtherance of dividing and distributing the marital assets is not subject to judgment enforcement provisions, such as Code of Civil Procedure sections 704.740 and 704.800. Nathan has not cited any authority supporting the proposition that the family court is subject to these judgment enforcement provisions when ordering the division and distribution of marital assets. Furthermore, there is substantial evidence demonstrating that the value of the Sea Island property exceeded the amount of the homestead exemption plus amounts necessary to satisfy all liens and encumbrances on the property. The family court found the Sea Island property value was $475,000 and there were no encumbrances. Nathan has not cited substantial evidence refuting these findings, and the reporter's transcript and evidence presented during the trial of these issues is not part of the record on appeal.

20

The record shows the family court determined the homestead exemption was $175,000, and the only potential remaining lien on the Sea Island property was the DCSS lien. Counsel for the DCSS informed the court at a hearing on May 25, 2012, on the parties' objections to the family court's statement of decision, that DCSS had updated its accounting on its lien, DCSS had determined that the DCSS lien had been satisfied, and Nathan had overpaid DCSS in an amount of $15,574. Robin also informed the family court during a hearing on December 7, 2012, that there was no outstanding DCSS lien and she requested DCSS to terminate services and the court to vacate all DCSS orders for child support. The family court confirmed with the parties and counsel for DCSS that there was no remaining DCSS lien balance against the Sea Island property. There is substantial evidence establishing that there were no liens or encumbrances on the Sea Island property, other than the *Mesa West* judgment lien. Therefore, the order to sell the Sea Island property was in compliance with the Enforcement of Judgments Act because the value of the Sea Island property exceeded the amount of the homestead exemption plus any liens and encumbrances on the property, other than the *Mesa West* judgment lien.

VI

CONSIDERATION OF THE EQUITIES

Nathan contends the family court abused its discretion in ordering the sale of the Sea Island property by not taking into consideration the equities against a prejudgment sale of the property. The July 31, 2012 amended statement of decision states that Nathan and Robin's two sons were living with Nathan and the children were free to visit Robin

21

as they wished. Nathan and his teenage sons were living at the Sea Island property. The court ordered joint legal and physical custody. Nathan argues that the family court was required to consider the equities of ordering the Sea Island property sold, including the impact the sale of the Sea Island property would have on Nathan's two minor children. We note that one of Nathan's sons is now 19 years old and therefore no longer a minor, and the other son will no longer be a minor in January.

Under Family Code sections 3801 and 3802, family courts are authorized to issue an order deferring sale of the family home if the court determines it is necessary in order to minimize the adverse impact of marital dissolution or legal separation on the child and it is economically feasible to maintain the physical condition of the home and required house payments during the deferral period. (Fam. Code, §§ 3801, 3802; *In re Marriage of Braud* (1996) 45 Cal.App.4th 797, 807-808.)

Nathan argues the family court abused its discretion by not considering or making any findings weighing the equities against selling the Sea Island property while he and his sons were living there. Nathan asserts the family court should have considered the mandatory factors required when determining whether to enter a "*Duke* Order" deferring the sale of the Sea Island property. In *In re Marriage of Duke* (1980) 101 Cal.App.3d 152, 158-159, the court held that the family court abused its discretion by not weighing the equities when it rejected the custodial parent's request to defer the sale of the family residence until the children were no longer minors. In reaching its holding, the *Duke* court stated, "we feel the subjective noneconomic impact on the family unit from being deprived of a home environment to which the children have become accustomed is

22

sufficiently significant to allow the court to enter a conditional order such as requested so long as undue hardship is not imposed on the noncustodial parent." (*Id.* at p. 157.) The *Duke* court further stated that, "Where there are minor children whose custody is to be awarded to a party, the custodial party is not financially able to acquire the family home as his or her property share, and that person desires a conditional order be made allowing him or her exclusive use of the home, the unique relationship of that asset to the family requires an analysis of all relevant factors . . . ." (*Id.* at p. 158.)

In *In re Marriage of Stallworth* (1987) 192 Cal.App.3d 742, 748, the court indicated that under *Duke* the family court was required to order that the sale of a family residence be deferred and that such an order be made "where adverse economic, emotional and social impacts on the minor result from an immediate loss of a long-established family home and are not outweighed by the economic detriment to the out-spouse by the delay in receiving his or her share of the proceeds in the equity of the family home." *Stallworth* added that "the trial judge should weigh these factors, as well as others, and be vested with broad discretion in making a disposition of *the family home*. [¶] . . . As a practical matter, it should be noted that the emotional attachment of a child to a home may be minimal if the child is very young and *of questionable significance if the child is an older teenager*." (*Ibid.*; emphasis added.)

Nathan has not established the family court erred in not imposing a *Duke* order delaying the sale of the Sea Island property. In the instant case, Nathan asserts the Sea Island property was not the family home because it was his separate property and both parties did not reside there before separation. In addition, the sale of the Sea Island

23

property was necessary to satisfy substantial outstanding marital debts and liens against the home, such as the $909,214.36 *Mesa West* judgment. Furthermore, it appears from the record that Nathan did not request the family court to enter a *Duke* order to defer the sale of the Sea Island property until his sons reached the age of majority.

The record also reflects that the family court spent an inordinate amount of time and effort reviewing the facts, evidence, issues, and equities before it. The family court provided the parties with a detailed proposed statement of decision, considered the parties objections, conducted additional hearings on the issues addressed in the proposed statement of decisions, and amended the statement of decision several times in response to the parties' objections. Nathan has not provided any evidence that the family court failed to weigh the equities or abused its discretion in ordering the Sea Island property sold.

## VII

## DISPOSITION

The January 9, 2013 order is affirmed. Robin is awarded her costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

McKINSTER
Acting P. J.

MILLER
J.

24